# CHARLESTON.

STATE *ex rel.* F. A. McNINCH *v.* A. A. PORTER *et als.*

(No. 6119)

Submitted April 10, 1928.     Decided April 17, 1928.

1.   CONTEMPT—*Party Having Probable Cause for Swearing Out Warrant for Arrest of Officer Executing Writ of Possession May Not be Summarily Punished for Contempt (Code, c. 147, § 27).*

   One may not be proceeded against and punished summarily for contempt under section 27 of chapter 147, Barnes' Code 1923, for swearing out a warrant for the arrest of an officer for assaulting him while executing a writ of possession for the property of which he was tenant in possession, when it appears that there was probable cause justifying the complaint on which the warrant was issued, and the complaint and arrest were not made until after he had signed a paper acknowledging the ownership of the party to be put in possession by the writ and his tenancy under such party as an alternative to being dispossessed.   (p. 443.)

   (Contempt, 13 C. J. § 43.)

2.   SAME—*Regardless of Common-Law Rights, Circuit Court May Not Punish Summarily, as for Contempt, Acts Not Enumerated in Statute (Code, c. 147, § 27).*

Notwithstanding the common-law right of courts to punish for contempt, a circuit court may not proceed and punish summarily for acts other than those enumerated in section 27 of chapter 147 of the Code.   (p. 445.)

(Contempt, 13 C. J. § 62.)

3.   SAME—*Writ of Error Lies From Supreme Court of Appeals to Circuit Court in Contempt Cases Other Than Where Charge is Nonperformance, or Disobedience, to Judgment, Decree, or Order (Code, c. 160, §4).*

By section 4 of chapter 160 of the Code, a writ of error will lie from the supreme court of appeals to a judgment of a circuit court in contempt cases other than where the charge is non-performance of, or disobedience to a judgment, decree or order of such court.   (p. 446.)

(Contempt, 13 C. J. § 155.)

(NOTE: Parenthetical references by Editors, C. J.—Cyc. Not part of syllabi.)

Error to Circuit Court, Marshall County.

Proceeding by the State, on the relation of F. A. McNinch, Sheriff of Marshall County, against A. A. Porter and others, for contempt. Judgment finding the named defendant guilty, and he brings error.

*Judgment reversed; complaint dismissed.*

*Chauncey D. Hinerman* and *D. B. Evans,* for plaintiff in error.

*Martin Brown* and *McCamic & Clarke,* for defendant in error.

MILLER, PRESIDENT:

F. A. McNinch, sheriff of Marshall county, prosecuted the present proceeding for contempt in the circuit court of said county, against A. A. Porter, T. C. Pipes, and Wylie Mc-Cardle, for resisting and interfering with deputy sheriff Benton Hazlett in the service of a writ of possession, the complaint charging that "the action of the said A. A. Porter in swearing out a warrant against the deputy, Benton Hazlett,

through the office of said T. C. Pipes, justice of the peace, and placing the same in the hands of Constable McCardle, was a contempt of the court under section 27, of chapter 147, of the Code of West Virginia, in this, to-wit: disobedience and resistance of an officer of the court to a lawful process, judgment, decree or order of this court, and was for the purpose of deterring and intimidating the officers of the court to keep them from executing the due process of the court;'' and further ''that he is informed and believes from all the facts and circumstances in the case, and therefore charges the fact to be, that the said A. A. Porter conferred with the said T. C. Pipes, justice of the peace as aforesaid, and Wylie McCardle, constable as aforesaid, all of whom entered into a conspiracy for the purpose of obstructing, hindering and delaying the officers of the circuit court of Marshall county, West Virginia, from executing the said lawful process of said court, and that the said A. A. Porter, by loud, boisterous and threatening language previous to the swearing out of the said complaint before said justice, attempted to provoke a breach of the peace with the said Benton Hazlett, who is a qualified deputy sheriff of said Marshall county, in the State of West Virginia.'' The complaint alleges that Hazlett committed no violation of the laws of the State, and did nothing on which to base the said complaint made before the justice. The warrant was for the arrest of Hazlett for an alleged assault on Porter.

On a summary trial before the circuit court the justice and constable were dismissed from the proceeding for want of evidence against them, but Porter was found guilty of the charge of contempt, and was fined $50.00.

From the evidence adduced before the circuit court it appears that on the day before the act charged in the complaint in the contempt proceeding, Deputy Sheriff Parks, in company with counsel for Mrs. Elizabeth McConaughey, with a writ of possession issued out of the circuit court of Marshall county to put Mrs. McConaughey in possession of property recovered by her in an action of ejectment, served copies of the writ on the tenants in possession of the property. The officer and the lawyer also presented to these tenants to be signed by them what are denominated ''attornment papers,''

acknowledging the ownership of Mrs. McConaughey and their tenancy under her. Porter and some of the other tenants refused to sign the papers at the time. The next day deputy sheriffs Parks and Hazlett returned and again asked the tenants to sign the papers, and indicated that they would have to put them and their property out of the building if they did not sign. During the argument that ensued, Porter claims that Hazlett assaulted him. From the evidence of what took place at the time, it would appear that probable cause existed justifying Porter in swearing out the warrant for assault. A number of witnesses testified that Hazlett struck Porter, and no one says that Porter struck the officer. All the tenants, however, including Porter, signed the papers, with the exception of one Stephens, who signified his willingness to do so if he could have a copy of the same. He and the officers went to a bank nearby to have a copy made. In the meantime Porter went to the office of the justice of the peace, T. C. Pipes, and swore out a warrant for the arrest of Hazlett. The warrant was placed in the hands of Constable McCardle, who, upon inquiry, learned that Hazlett was at the bank. The constable went there, presented the warrant to Hazlett, and accepted a cash bond of ten dollars for his appearance when called for. Stephens signed the attornment when the copy was made for him. It does not appear that Porter had anything to do with the arrest after he appeared before the justice and made the complaint.

The charge of contempt is based on the fourth clause of section 27, of chapter 47, of the Code. This section reads: "The courts and judges thereof may issue attachments for contempts, and punish them summarily only in the cases following: 1. Misbehavior in the presence of the court, or so near thereto as to obstruct or interrupt the administration of justice. 2. Violence or threats of violence to a judge or officer of the court, or to a juror, witness, or party going to, attending or returning from the court, for or in respect of any act or proceeding had, or to be had, in such court. 3. Misbehavior of an officer of the court, in his official character. 4. Disobedience or resistance of any officer of the court,

juror, witness, or other person, to any lawful process, judgment, decree or order of the said court.''

Obviously, the acts complained of can not be brought within either of the first three clauses of this section. Then to give the court jurisdiction to punish summarily the fourth clause must be found to apply.

In what way did Porter disobey or resist an officer of the court? He disobeyed no writ or order. None was addressed to him. The writ commanded the sheriff to ''cause Elizabeth McConaughey to have possession of all that certain tract or parcel of land'' described therein. And it is clear that Porter offered no physical resistance to the service of the writ. Threats with the intent of intimidating or impeding an officer in the discharge of his duties as such are not recognizable under section 27, of chapter 147, but under section 30 thereof, making such acts a misdemeanor, for which the court may not proceed summarily. At the time the arrest was made all the tenants had signed the papers presented to them, with the exception of Stephens, and he was only waiting for a copy of the paper. All matters in difference had been settled. The tenants had at first refused or declined to sign the papers until they could secure the advice of counsel. They say they wanted to be sure who was the actual owner of the property then occupied by them, that they might not be obligated to pay rent to more than one claimant. Porter claims that he told Mrs. McConaughey's counsel that he ''would as leave pay her as anybody, but I didn't want to pay it over.'' Presumably, upon advice of counsel they all agreed to sign the papers. The evidence all leads to the inference that Porter signed before he made the complaint for the arrest of Hazlett; and it can not be inferred that the complaint was made to intimidate or impede the officers in executing the writ. After the complaint was made, the warrant was in the hands of the justice or the constable, and they alone were responsible for the time the arrest was to be made.

Much is said in argument of the prerogative right of the courts to punish summarily for contempt, and that such right can not be abridged by legislative enactment. Section 27, of chapter 147, has been held constitutional. *State* v. *McClaugh-*

*erty,* 33 W. Va. 250. It is there said that the statute is simply a regulation of the proceedings and not a limitation upon the jurisdiction of the courts in contempt cases; and that under section 30, the courts have "an efficient means of punishment. They have the right at any time to call before them both grand and petit juries, and under the statute they may with but little delay—almost as summarily as before the statute—punish such contempts. The statute as to such courts may well be regarded as a regulation, and, perhaps, a necessary and proper limitation."

Counsel for the relator McNinch argue that the present writ of error should be dismissed, citing our recent case of *State* v. *Bittner,* 102 W. Va. 677, 136 S. E. 202, and the many authorities cited and reviewed in the opinion in that case. In that opinion will be found a full discussion on the question of appeals in contempt cases. That case, it is to be noted, however, was one involving contempt for the violation of an injunction order. Section 4, of chapter 160, of the Code provides: "To a judgment of a circuit court, for a contempt of court, other than for the non-performance of, or disobedience to a judgment, decree or order, a writ of error shall lie from the supreme court of appeals." Here there is no question of the non-performance of an order of the court. No writ or order commanded Porter to do or refrain from doing any act. And as we have said above, there is no evidence of disobedience of any order, judgment or decree. Clearly, therefore, the case comes within the purview of said section 4, as one in which a writ of error will lie to this court.

The judgment of the circuit court will be reversed, and the complaint dismissed.

*Judgment reversed; complaint dismissed.*