STATE OF WEST VIRGINIA

*v.*

CLARENCE E. BOYD and

STEVEN M. ASKIN

(No. 15064)

Decided April 3, 1981.

*Askin & Burke & D. Michael Burke* for appellant.

*Chauncey H. Browning*, Attorney General, & *S. Clark Woodroe*, Assistant Attorney General, for appellee.

MILLER, JUSTICE:

In this case we must determine whether there was sufficient evidence to warrant the trial court's imposition of fines, in the amounts of $25, $50, $50 and $25, for four separate acts of alleged contempt committed by attorney Steven M. Askin, the appellant, during the course of a criminal trial.

The event that precipitated the first contempt citation occurred when Mr. Askin, the defendant's attorney, was

questioning a defense psychologist, a Dr. Bell, in regard to the defendant's insanity. He asked Dr. Bell, whether in reaching an opinion regarding the defendant's insanity, he had relied upon written opinions from a psychiatrist who worked at Weston State Hospital along with Dr. Bell. The prosecuting attorney objected to this question. Defense counsel, in the course of arguing that the question was proper, cited *State v. Pendry*, 159 W. Va. 738, 227 S.E.2d 210 (1976), to the court but the court ruled that the question was inadmissible because the response would be hearsay.

Defense counsel stated he would like to make a record on this point. The judge replied he did not need the law read to him and defense counsel replied, "And you're telling me I can't do it?" The court then excused the jury and proceeded to fine the attorney $25 for contempt.[1] Where-

---

[1] The transcript of this portion of the proceedings is:

"ASKIN: Your Honor, I believe 'State v. [Pendry]' says a psychologist and a psychiatrist can rely on medical reports compiled in the treatment and evaluation. And if he relied on—if he today can form an opinion based on any medical treatment, any records or any family history, then it's relevant. He can testify to it and he can tell the jury about it. And if Mr. Skinner thinks I'm wrong, I can read it to you from '[Pendry]'.

"COURT: You don't have to read it to me from '[Pendry]'. If there were absent psychiatrists or psychologists whose opinion he was rendering,—he was basing his opinion on, then I would have less problem, but we're—we have all the people here who have examined him or who— presumably we have all the people that have examined this Defendant. And . . . . .

"ASKIN: They are not on the stand; he is. And I haven't asked him what those doctors said. All I said is, 'I—do you rely on them?' If he told me he doesn't rely on them, it's an unnecessary question. If he does rely on what Dr. Kubski said, in keeping within the proper practices of his profession, as our Supreme Court has said is proper, I think I can ask that question. And I think he's entitled to answer it and the jury's entitled to hear—to be made aware of what he said.

"COURT: No, it's hearsay.

"ASKIN: Well, I'll make my record, your Honor. I will cite the case to the Court and I will read the language.

upon the attorney requested a mistrial on the basis that he could not continue if he were fined every time he objected to the court's ruling. This brought a $50 fine and when the defense counsel moved again for a mistrial, the court imposed a further $50 fine.[2]

The court then ordered that the jury be returned to the courtroom. At this point, the attorney sought a recess in order to compose himself and the court granted a recess.[3]

---

"COURT: The Court—you don't have to read it to me, I have read it. And I'm aware of it.

"ASKIN: And you're telling me I can't do it?

"COURT: Jury, step back to the jury room, please.

(Jury escorted from Courtroom to jury room—In Courtroom—Defendant still present in person and by Counsel.)

"COURT: Mr. Askin, your behavior is insolent to the Court and entirely inconsistent with the office of attorney at law. The Court fines you $25.00 for contempt of Court. And the Court admonishes you to restrain yourself.

"ASKIN: I don't have $25.00, your Honor.

"COURT: You can bring it in."

[2] The transcript covering these events is:

"ASKIN: Well, your Honor, I'm not going to be able to continue with the trial under any circumstances because I'm now intimidated by this Court, if I open my mouth and object, or argue in any way to protect my client, you're going to find me in contempt of Court. So, I'm asking for a mistrial. You can put me in Jail if you want, but I can't continue if you put me in contempt of Court and fine me money in a criminal case.

"COURT: For the remarks you just made the Court fines you—finds you in contempt and fines you an additional $50.00. Bring the jury back in.

"ASKIN: That's fine, but I'm moving for a mistrial, your Honor.

"COURT: Just a moment. For the remarks you just made, the Court fines you another $50.00 for contempt of Court. Bring the jury in."

[3] The transcript reflects these statements:

"COURT: All right. The Court has just ruled on the objection. You may continue.

"ASKIN: Your Honor, I cannot continue at this time, after what has just transpired, I cannot properly represent this man, after what's just transpired. I need a recess and (renew) the motions that was (were) previously made.

During the recess, the court reminded the attorney that he could not address a judge as he had been doing without risking a fine of contempt. The attorney responded that he was obliged to make his record and denied that he was being insolent and concluded by saying, "I'm being respectful as I can." Whereupon, the judge imposed the final fine of $25.[4]

We have not recently had occasion to discuss at any length what actions on the part of an attorney may give rise to a summary contempt fine. We have traditionally held that our contempt statute, W. Va. Code, 61-5-26, restricted the common law power to punish summarily for contempt by limiting this power to only those acts enumerated in the statute. This point was made in *State ex rel. Arnold v. Conley*, 151 W. Va. 584, 588, 153 S.E.2d 681, 684 (1966):

> "In State ex rel. McNinch v. Porter, 105 W. Va. 441, pt. 2 syl., 143 S.E. 93, it was held that, notwithstanding the common law right of courts to punish

---

"COURT: You may continue. If you don't have any further questions of the witness, he will be excused from the stand.

"ASKIN: I—your Honor, I don't think—your Honor, I have questions for the witness, but at this time, after what has just happened, I don't feel I can competently ask the questions in this Courtroom and defend Mr. Boyd to the best of my ability. I need a recess to compose myself, after what has just happened.

"COURT: We'll take a fifteen minute recess. The jury will disregard Mr. Askin's last remarks. The jury will stand back to their jury room."

[4] The transcript of this portion of the contempt fine was:

"COURT: The Court will simply remind you, Mr. Askin, that an attorney cannot address a Judge as you have been doing, without risking a fine of contempt. You know that as well as I do.

"ASKIN: Well, Judge, for me to make a record, your Honor, properly, I have to do that. I have to move for a mistrial every time I feel it's necessary. To be fined whenever I move for a mistrial. . . . .

"COURT: You cannot be insolent in so doing.

"ASKIN: I'm not being insolent. I'm being as respectful as I can.

"COURT: You are fined another $25.00 for contempt of Court for that last remark. Off the record. The recess is in."

for contempt, a circuit court may not proceed and punish summarily for acts other than those enumerated in the statute. To the same effect, see State v. Hansford, 43 W. Va. 773, pt. 1 syl., 28 S.E. 791."

The provisions pertinent to the present case are subsections (a) and (c) of W. Va. Code, 61-5-26:[5]

"(a) Misbehavior in the presence of the court or so near thereto to obstruct or interrupt the administration of justice;

. . .

"(c) misbehavior of an officer of the court, in his official character; . . ."

Although we have not considered W. Va. Code, 61-5-26, as solely defining the substantive grounds for all contempt,[6]

---

[5] The entire text of W. Va. Code, 61-5-26, is:

"The courts and the judges thereof may issue attachment for contempt and punish them summarily only in the following cases: (a) Misbehavior in the presence of the court, or so near thereto as to obstruct or interrupt the administration of justice (b) violence or threats of violence to a judge or officer of the court, or to a juror, witness, or party going to, attending or returning from the court, for or in respect of any act or proceeding had, or to be had, in such court; (c) misbehavior of an officer of the court, in his official character; (d) disobedience to or resistance of any officer of the court, juror, witness, or other person, to any lawful process, judgment, decree or order of the said court. No court shall, without a jury, for any such contempt as is mentioned in subdivision (a) of this section, impose a fine exceeding fifty dollars, or imprison more than ten days. But in any such case the court may impanel a jury (without an indictment or any formal pleading) to ascertain the fine or imprisonment proper to be inflicted, and may give judgment according to the verdict. No court shall impose a fine for contempt, unless the defendant be present in court, or shall have been served with a rule of the court to show cause, on some certain day, and shall have failed to appear and show cause."

[6] In *State v. Hansford*, 43 W. Va. 773, 775, 28 S.E. 791, 792 (1897), after setting out the principle that W. Va. Code, 61-5-26, limits the categories where summary contempt could be exercised, we said without reference to the statute:

"What is a contempt? Cooley's Bl. Comm. bk. 4, p. 283, says that contempts 'are either direct, which openly insult or resist powers

it should be noted that subsection (a) states that the contemptuous conduct must be committed in the presence of the court and it must "obstruct or interrupt the administration of justice." This is essentially the test evolved by the United States Supreme Court in *In re McConnell*, 370 U.S. 230, 8 L.Ed.2d 434, 82 S.Ct. 1288 (1962), where an attorney made continued attempts to offer proof on an issue that the judge had ruled inadmissible. The attorney announced he would continue the offer of proof until "some bailiff stops us." The Supreme Court declined to affirm the contempt and quoted from its earlier case of *Ex Parte Hudgings*, 249 U.S. 378, 383, 63 L.Ed. 656, 658, 39 S.Ct. 337, 339 (1919):

> " 'An obstruction to the performance of judicial duty resulting from an act done in the presence of the court is, then, the characteristic upon which the power to punish for contempt must rest. This being true, it follows that the presence of that element must clearly be shown in every case where the power to punish for contempt is exerted. . . .' " 370 U.S. at 234, 8 L.Ed.2d at 437, 82 S.Ct. at 1291.

The Supreme Court in *McConnell* went on to state:

> "The arguments of a lawyer in presenting his client's case strenuously and persistently cannot amount to a contempt of court so long as the lawyer does not in some way create an obstruction which blocks the judge in the performance of his judicial duty." 370 U.S. at 236, 8 L.Ed.2d at 438, 82 S.Ct. at 1292.

One other element, before a contempt fine will be upheld, is that the obstruction has to be imminent and not remote. This requirement is set out in *Craig v. Harney*, 331 U.S. 367, 376, 91 L.Ed.1546, 1552, 67 S.Ct. 1249, 1255 (1947):

> "The vehemence of the language used is not alone the measure of the power to punish for contempt. The fires which it kindles must constitute an

---

of the court or the persons of the judges who preside there, or else are consequential, which (without such gross insolence or direct opposition) plainly tend to create an universal disregard of their authority.' "

imminent, not merely a likely, threat to the administration of justice. The danger must not be remote or even probable; it must immediately imperil."

*See also, Eaton v. Tulsa*, 415 U.S. 697, 698, 39 L.Ed.2d 693, 695, 94 S.Ct. 1228 (1974); *In Re Little*, 404 U.S. 553, 555, 30 L.Ed.2d 708, 711, 92 S.Ct. 659, 660 (1972).

The general law follows the foregoing Supreme Court cases. The rule with regard to contempt of court by an attorney begins with a recognition that under our adversary system of justice zealous advocacy on the part of an attorney must be permitted. Consequently, it is only when his conduct is boisterous or disrespectful to the degree that it constitutes an imminent threat to the administration of justice that summary punishment for contempt will be authorized. The following cases support this principle and in each instance the contempt conviction was reversed. *Weaver v. Superior Court*, 572 P.2d 425 (Alaska 1977) (attorney, accused by judge, of delaying trial through long voir dire, moved for a mistrial and was then cited for contempt); *In re Carrow*, 40 Cal. App.3d 924, 115 Cal. Rptr. 601 (1974) (attorney held in contempt for statement, "Your honor, I submit this trial is becoming a joke."); *In re Schwartz*, 391 A.2d 278 (D.C. App. 1978) (attorney had made repeated attempts to object and the court thought this was designed to delay the proceedings); *State v. Pokini*, 55 Hawaii 430, 521 P.2d 668 (1974) (contempt charge against attorney for speaking at a motion hearing without being recognized by the court and for refusing to be seated); *People v. Miller*, 51 Ill.2d 76, 281 N.E.2d 292 (1972) (sarcastic and injudicious comments including the threat of appealing the case caused the court to hold attorney in contempt); *In re Sanborn*, 208 Kan. 4, 490 P.2d 598 (1971) (attorney advised by judge to make only general objections to expedite trial, he continued to state ground for objections to preserve the record); *In re Meizlish*, 72 Mich. App. 732, 250 N.W.2d 525 (1976) (attorney's persistent argument to obtain a reduction in bail for his client after court had set bail resulted in contempt fine); *People v. Kurz*, 35 Mich. App. 643, 192 N.W.2d 594 (1971) (attorney held in

contempt 107 times for failing to abide by court rules designed to expedite trial); *Commonwealth v. Rubright,* 414 A.2d 106 (Pa. 1980) (attorney objecting to hearsay, placed in contempt when judge asked if he knew what hearsay was and he replied, "Yes I do, do you?"); *Commonwealth v. Garrison,* 478 Pa. 356, 386 A.2d 971 (1978) (attorney cited for contempt for his objections and statement, "May my client be seated as well, or is he to be flagellated in front of the jury.")

It need hardly be stated that the requirement of zealous representation is not a new one. It is embodied in Canon 7 of the Code of Professional Responsibility.[7] Implicit in this duty of zealous representation is a recognition that there may be occasions when, in the heat of advocacy, statements may be made that are injudicious. We spoke to much this same point in *State v. Jasper,* 78 W. Va. 385, 389, 88 S.E. 1096, 1098 (1916), where an attorney was found not guilty of contempt in filing a plea to quash indictments on the ground that the judge had improperly influenced the grand jury. A second charge of contempt was sustained when the attorney directed his clients not to answer certain questions:

> "It is the duty of counsel, when addressing the court in the interest of his client, to combat and contest any adverse views of the judge expressed in the argument, and to protest against any course the judge may take which he thinks detrimental to the interest of his client. Much freedom and latitude should be allowed an attorney, . . ."

In the present case, we do not find Mr. Askin's remarks to be boisterous or disrespectful to the degree that there was any imminent threat to the administration of justice. After the prosecutor's initial objection to his questions, Mr. Askin attempted to inform the court as to the law upon which he relied. This was entirely proper. The court's rejoinder caused counsel to make a fuller explanation of his

---

[7] Canon 7 of the West Virginia Code of Professional Responsibility provides:
"A Lawyer Should Represent a Client Zealously Within the Bounds of the Law."

view of the law. When the court still viewed the question as hearsay, defense counsel stated he wanted to make a record. At this point, there is nothing to show any improper conduct on the part of defense counsel. It is clear under our law, that as to evidentiary errors, an attorney must preserve them on the record or be foreclosed from raising them on appeal. *State v. Clawson,* 165 W. Va. 588, 270 S.E.2d 659 (1980); *State v. Mahramus,* 157 W. Va. 175, 200 S.E.2d 357 (1973).

The court's admonition not to read the law to him was then followed by counsel's statement, "And you're telling me I can't do it," which produced the excusing of the jury by the court and the first fine for contempt. This exchange can only be characterized as zealous advocacy and we find nothing contemptible in counsel's remarks. In the words of *Jasper,* an attorney may "protest against any course the judge may take which he [counsel] thinks detrimental to the interest of his client." 78 W. Va. at 389, 88 S.E. at 1098. Counsel's remaining remarks that he felt intimidated by the court and wanted a mistrial were made out of the presence of the jury and followed the first contempt fine. These remarks were made as a way of objecting to the court's refusal to give him latitude to make his objections. These remarks do not raise to the level of disrespect that threatens the administration of justice under the foregoing law.

For the foregoing reasons, we, therefore, reverse the contempt convictions.

*Reversed.*