332 S.E.2d 629

**Michael C. FARBER**

v.

**Elmer D. STRICKLER, etc., et al.**

**Michael C. FARBER**

v.

**Elmer D. STRICKLER, etc.**

**Nos. 16699, 16718.**

Supreme Court of Appeals
of West Virginia.

Submitted June 4, 1985.

Decided July 9, 1985.

Dissenting Opinion July 12, 1985.

Jolyon W. McCamic, McCamic & McCamic, Wheeling, for petitioner.

Robert B. King, King Betts & Allen, Charleston, Gary L. Johnson, Pros. Atty., Summersville, for respondent.

McGRAW, Justice, dissenting.

Fundamental disagreement with the majority in this case[1] compels my dissent.

---

1. The majority's opinion, with Justices McGraw and McHugh dissenting, was announced in the following unpublished order:

These consolidated proceedings came on this day for decision upon petitions filed by the relator, Michael C. Farber, for writs of habeas corpus, mandamus, and prohibition; upon the rule to show cause issued by this Court on May 15, 1985, and made returnable on June 4, 1985; upon the briefs and oral arguments of the parties; and upon all papers filed herein.

These proceedings involve an incident which occurred on April 25, 1985, in the Circuit Court of Nicholas County. On that day the relator, an attorney, repeatedly intervened and advised a client, Jerry Harlow, a witness for the State in a criminal proceeding against another party, not to testify. He also moved that the respondent judge of the Circuit Court of Nicholas County excuse Harlow's appearance until certain matters involving him were resolved. The respondent denied the motion and directed Harlow to respond to questions

posed to him. He also granted Harlow transactional immunity with respect to any testimony which might tend to incriminate him, except one to which he had already entered a guilty plea. After the relator persisted in advising Harlow not to testify and refused to be silent, the respondent held him in contempt of court and ordered that he be confined in the county jail until he agreed to obey the court's orders. After being confined for a short period of time, he was released.

In the present proceedings the relator contends that he was not in contempt and that he was not afforded an adequate opportunity to present defenses against the contempt charges and that he be afforded other relief.

Although this Court has recognized that zealous advocacy by an attorney must be permitted "when [an attorney's] conduct is boisterous or disrespectful to the degree that it constitutes an imminent threat to the administration of justice ... summary punishment for contempt will be authorized." Syl. pt. 2,

From the tone of the majority opinion, proper courtroom behavior is portrayed as but a one-way street. Our Judicial Code of Ethics, however, indicates otherwise. Canon 3A(3) of the Judicial Code of Ethics expressly provides, "A judge should be patient, dignified, and courteous to litigants, jurors, witnesses, lawyers, and others with whom he deals in his official capacity." Furthermore, as the commentary to this canon observes, "The duty to hear all proceedings fairly and with patience is not inconsistent with the duty to dispose promptly of the business of the court. Courts can be efficient and business-like while being patient and deliberate." Finally, Canon 2A of the Judicial Code of Ethics provides that, "A judge ... should conduct himself at all times in a manner that promotes public confidence in the integrity and impartiality of the judiciary." In contrast to a judge's duty of impartiality, our Code of Professional Responsibility provides that, "The duty of a lawyer, both to his client and to the legal system, is to represent his client zealously within the bounds of the law." Ethical Consideration 7-1.

As noted by the court in *Gallagher v. Municipal Court*, 31 Cal.2d 784, 796, 192 P.2d 905, 913 (1948), "An attorney has the duty to protect the interests of his client. He has a right to press legitimate argument and to protest an erroneous ruling."

Given the conflicting roles of judges and lawyers, it is inevitable that disagreements will arise with respect to line of demarcation between zealous and overzealous representation. The key becomes the identification of the common ground between these conflicting roles. First, there is the qualification on a lawyer's duty of zealous representation that it be "within the bounds of law." Illumination of this concept is provided by the prohibition in Disciplinary Rule 7-102 of the Code of Professional Responsibility against "[k]nowingly advanc[ing] a claim or defense that is unwarranted under existing law, except that [a lawyer] may advance such claim or defense if it can be supported by good faith argument for an extension, modification, or reversal of existing law." Second, there is Ethical Consideration 7-23 of the Code of Professional Responsibility, which provides

*State v. Boyd*, 166 W.Va. 690, 276 S.E.2d 829 (1981).

In the case before the court it appears that the relator's conduct exceeded that necessary for proper advocacy, especially in view of the fact that the respondent granted the relator's client transactional immunity. Given the circumstances and the limited record of what happened, we hold that the respondent acted within his authority to maintain order in his court in citing the relator for contempt. A judge must always have the authority to maintain order in his court. However, it does appear that the sanction already applied against the relator was adequate for any offense committed. We presume that Mr. Farber's outbursts were due to overzealous advocacy on his part and not because of any disrespect for the court. There is no reason for this incident to proceed further. Judges and attorneys should be arbitrators and not adversaries. We are, therefore, of the view that the relator should not be punished further for his action and that the respondent should be prohibited from proceeding further with the matter. It also appears that the relief which the relator seeks will not remedy what has already occurred with regard to the contempt matter. We, therefore, conclude that the relator's requests for hearings and other proceedings on the contempt citation should be denied.

It is, therefore, Adjudged and Ordered that a Writ of Prohibition be, and the same hereby is, issued prohibiting the respondent judge of the Circuit Court of Nicholas County from punishing the relator further for any contempt committed on April 25, 1985, and it is further Adjudged and Ordered that the same matters raised in this proceeding be, and the same hereby are, dismissed.

It is Ordered that service of an attested copy of this order upon the respondent shall have the same legal effect a service of a formal writ of prohibition.

McHugh, Justice, dissenting:

In the case before us, it appears that the performance of both parties exceeded that necessary for their respective roles. Clearly, the respondent has the authority and, indeed, the duty to maintain order in the courtroom. *See* Judicial Code of Ethics, Canon 3A. The relator must, also, be allowed to properly act as an advocate or advisor on behalf of his client within the bounds of the law. *See* Code of Professional Responsibility, Canons 6 and 7.

Given the circumstances and the limited record of what happened, I am of the opinion that both parties exceeded the bounds of propriety. Even assuming the relator was in contempt of court the sanction already applied against him was adequate for any offense committed.

that, "The complexity of law often makes it difficult for a tribunal to be fully informed unless the pertinent law is presented by the lawyers in the case. A tribunal that is fully informed on the applicable law is better able to make a fair and accurate determination of the matter before it."

Clearly, the judge in the instant proceeding should have given the attorney an opportunity to support his advice to his client with pertinent authority. A brief recess for this purpose is a frequently utilized tool to afford counsel the chance to locate the law on a disputed issue. This mechanism furthers two interests. First, it avoids escalation of the confrontation between the parties concerned. Second, it supplies the tribunal with the applicable law in order that a fair and accurate determination of the disputed matter be reached. Zealous representation to one judge may be overzealous representation to another judge. Lawyers should not be left to tremble in anticipation as to where the sword of justice will fall in these situations. Permission to obtain proper authority would avoid these unfortunate encounters.

Ultimately, however, lawyers must recognize that, "Respect for judicial rulings is essential to the proper administration of justice ... a litigant or his lawyer may, in good faith and within the framework of law, take steps to test the correctness of a ruling of a tribunal." Ethical Consideration 7–22. Trial courts are certainly far from infallible, which explains the existence of appellate courts. Furthermore, the trial judge in the instant proceeding, history will reflect, is certainly no exception. *See, e.g., State v. T.C.,* 172 W.Va. 47, 303 S.E.2d 685 (1983); *State v. Hall,* 171 W.Va. 212, 298 S.E.2d 246 (1982); *State v. Meadows,* 170 W.Va. 191, 292 S.E.2d 50 (1982); *Osnes v. Morris,* 171 W.Va. 266, 298 S.E.2d 803 (1982); *State v. Adkins,* 168 W.Va. 330, 284 S.E.2d 619 (1981); *State v. Barnett,* 168 W.Va. 361, 284 S.E.2d 622 (1981); *Groves v. Compton,* 167 W.Va. 873, 280 S.E.2d 708 (1981); *Kendrick v. Johnson,* 167 W.Va. 269, 279 S.E.2d 646 (1981); *State v. Craft,* 165 W.Va. 741, 272 S.E.2d 46 (1980); *State v. Stone,* 165 W.Va. 266,

268 S.E.2d 50 (1980); *State v. Barnett,* 161 W.Va. 6, 240 S.E.2d 540 (1977); *Summers v. Brown,* 160 W.Va. 679, 236 S.E.2d 344 (1977); *Board of Church Extension v. Eads,* 159 W.Va. 943, 230 S.E.2d 911 (1976); *Dorsey v. Short,* 157 W.Va. 866, 205 S.E.2d 687 (1974); *Butler v. Rader,* 155 W.Va. 838, 187 S.E.2d 627 (1972).

I firmly believe, however, that in the instant proceeding, the trial judge's actions were excessive in his incarceration of this recently admitted young lawyer who once served this Court with distinction as a Board of Regents intern in his senior year as a student at Glenville State College. I must therefore dissent.