401 S.E.2d 475

**Jose G. (Joseph) PRITCHARD, M.D.**

v.

**S. Eileen CATTERSON, M.D., and David K. Heydinger, as President and Secretary of the West Virginia Board of Medicine; and the West Virginia Board of Medicine.**

**No. 19194.**

Supreme Court of Appeals of West Virginia.

Dec. 19, 1990.

Rehearing Denied Feb. 6, 1991.

---

Deborah Lewis Rodecker, Charleston, for S. Eileen Catterson and David K. Heydinger.

Bernard L. Spaulding, Logan, for Jose G. Pritchard.

BROTHERTON, Justice:

The appellants, S. Eileen Catterson and David K. Heydinger, representatives of the West Virginia Board of Medicine ("Board"), appeal from the February 18, 1989, order of the Circuit Court of Logan County, which set aside the appellant's order revoking the appellee's license to practice medicine and remanded the case for further proceedings. The appellants ask that this Court reinstate the appellants' original order in full. After reviewing the record, we conclude that no error was committed by the Board and reverse the order of the Logan County Circuit Court and reinstate the May 18, 1988, order which revoked Dr. Pritchard's license to practice medicine.

Dr. Jose Pritchard was licensed to practice medicine in West Virginia in 1981. His practice is located in Logan County. In March, 1986, Pritchard was notified in writing by the Director of the Health Care Administrative Sanctions, Office of Investigations of the Inspector General at the Department of Health and Human Services of the Federal Government, that a determination had been made to exclude him from participation in the Medicare Program for a period of five years. The March 17, 1986, notification specified that the basis for the exclusion decision was a recommendation supported by the federal agency which had previously been provided to Pritchard in a letter of December 31, 1985, by the West Virginia Medical Institute, Inc., the Peer Review Organization (PRO) for West Virginia. The PRO had recommended exclusion based on a determination that in twenty specific cases, Pritchard had violated certain obligations of the Social Security Act and provided care which was either medically unnecessary, failed to meet profes-

sionally recognized standards of health care, or both. The agency stated that Dr. Pritchard was unable to analyze the patients' medical problems, and plan and organize care in a coherent manner. Thus, the Department of Human Services stated that in the twenty cases cited, "[y]our treatment presented an imminent danger to the health, safety, or well-being of patients involved." The notice also found that Pritchard had demonstrated an "unwillingness or lack of ability substantially to comply with the obligations imposed on you" by the Social Security Act. In support of this conclusion, the agency offered evidence that Pritchard failed to respond to the initial and second sanction notice from the PRO to discuss the detected violations.[1]

The Executive Director of the PRO, Betty Kirkwood, testified that the Medicare exclusion recommendation was made after a review of the twenty cases by sixteen different physicians.[2] The exclusion from the Medicare Program is the most severe restriction ever recommended by the PRO and had never been recommended for any other physician.[3]

In December, 1986, Pritchard and the federal agency entered into a Settlement Agreement whereby Pritchard was excluded from the Medicare Program for twenty-seven months, beginning April 6, 1986. Pritchard was also directed to submit a written Corrective Action Plan within thirty days, including continuing medical education. Thus, in March, 1987, the Board requested that Pritchard appear at a meet-

ing of its Complaint Committee in September, 1987, after receiving news of the existence of the Settlement Agreement. On July 30, 1987, Pritchard was advised to bring a copy his Corrective Action Plan to the September, 1987, meeting. He was informed he could be accompanied by counsel to the meeting, if he wished.

Ronald Walton, Executive Director of the Board of Medicine, stated that Pritchard appeared at the September meeting, but without a Corrective Action Plan. Pritchard claimed that he had picked up the wrong folder in haste and that the Corrective Action Plan had been submitted to the federal agency. Pritchard agreed to forward his Corrective Action Plan to the Board upon his return home. However, the Plan was never received.

Pritchard later admitted that Kirkwood and Walton were correct and no plan existed at that time. He stated that his failure to comply with the Settlement Agreement was "my fault," "my responsibility," and that he had no excuse, explaining that he had been very depressed. A letter to Betty Kirkwood, dated October 20, 1987, from the Regional Inspector General for Investigations for the Office of Inspector General of the Federal Department of Health and Human Services stated that:

> The time allowed in that [December 11, 1986] Agreement for submission, review, and finalization of the Corrective Action Plan (a total of 70 days) has long passed, but the Office of Inspector General has not yet received a copy of any proposed

1. The letter noted that the medical director of the PRO had written to Pritchard in November, 1985, after Pritchard failed to respond to two earlier communications, and urged him to develop a Corrective Action Plan. He noted that Pritchard had met with the PRO on November 24, 1985, but failed to submit a Corrective Action Plan.

2. The cases discussed include Pritchard's treatment of a sixty-five-year-old patient, whom he admitted with a diagnosis of clinical pneumonia, but later determined that the reason for admission appeared to be renal failure which rapidly worsened in the hospital. The patient needed the care of a nephrologist, but did not receive this treatment. An antibiotic was prescribed which raised the BUN and creatinine levels. It was also determined there was "gross

mismanagement of congestive heart failure" in a seventy-five-year-old patient, and an eighty-six-year-old patient, who had a duodenal ulcer and gastrointestinal bleeding, but no "on-going therapy [was] directed toward the ulcer which had caused the rather marked symptoms at admission." Several other cases were cited for inappropriate treatment and/or wrong diagnoses.

3. The PRO is a non-profit agency authorized by federal law to act as consultants to the Federal Department of Health and Human Services. It conducts utilization and quality control peer review in the State of West Virginia and determines whether to exclude a physician from Medicare reimbursement. The PRO board of trustees consists of twelve Medical Doctors, one Doctor of Osteopathy, one hospital administrator, and one Medicare beneficiary.

or final Corrective Action Plan from Dr. Pritchard.

The Plan was finally received on October 23, 1987. Betty Kirkwood testified that the plan was submitted, but not accepted, since the PRO was concerned about the adequacy of the plan.

Ronald Walton also stated that when Pritchard met with the Complaint Committee in September, 1987, he was asked to explain an answer on his Biennial Renewal of License Application form, on which he had indicated that he had no malpractice judgments or settlements against him during the past two years. This information conflicted with a report from CNA Insurance Companies, which reported a settlement on March 4, 1986 of a claim against Pritchard during the same two year period. Walton's testimony was that Pritchard first answered that he had reported the settlement on another, earlier form. When that response was discovered to be wrong, Pritchard responded that he did not know the claim had been settled and asserted that it must have been on a malpractice application form that he had reported the settlement and that he had confused the two forms. The Biennial Renewal Form noted that "[f]raudulent answers to the following questions shall result in licensure denial or revocation." Pritchard testified that with respect to the malpractice question, there was never any intention to "commit a falsehood," since he thought the malpractice case was a pending case and had not been settled and thus, he did not answer affirmatively on the form.

On October 2, 1987, the West Virginia Board of Medicine filed a Complaint against Pritchard, with a Notice of Hearing scheduled for November 5, 1987. In the complaint, the Board noted the action before the Department of Health and Human Services and asserted that Pritchard had violated several provisions of the West Virginia Medical Practice Act and regulations promulgated thereunder. Pritchard was charged with professional incompetence and failure to practice medicine with a reasonable, acceptable level of care, skill, and safety for patients, citing the case studies of the PRO. He was also charged with dishonorable, unethical, and unprofessional conduct, based upon his misrepresentation of the existence of the Corrective Action Plan and his failure to perform a legal obligation in not preparing the Corrective Action Plan as agreed. Finally, he was charged with renewing a license to practice medicine by fraudulent misrepresentation, based upon his failure to report the malpractice settlement on his Biennial License Renewal Form.

Pritchard appeared with counsel at the hearing held on November 5, 1987, before a hearing examiner. During the hearing, Betty Kirkwood, Ronald Walton, and Stephen Brown of CNA Insurance testified and were cross-examined by Pritchard's counsel.[4] Pritchard testified at the hearing and stated that his response to the complaint was an accurate representation of the facts. Pritchard admitted that the PRO had identified twenty cases in which he violated the Social Security Act. He also admitted that the procedures as set forth by the Board were correct. However, he denied the charges alleging he falsified his application for license renewal, that his actions were unethical and unprofessional, and that he failed to perform a legal obligation. No objections were made by Pritchard at that time. After a transcript was prepared and received in mid-March, 1988, in accordance with the Board's regulations, it was forwarded to the Board for review.

The Board, at its regular meeting on May 16, 1988, voted to revoke Pritchard's license to practice medicine and surgery, effective May 28, 1988, and issued the order on May 18, 1988. Pritchard filed a petition appealing the Board's order in the Circuit Court of Logan County. On June 9, 1988, the petition was brought on for hear-

---

4. CNA Insurance Companies' Claims Specialist, Stephen Brown, testified that it is CNA's policy to obtain consent from the insured physician before entering into settlement negotiations and that a letter specifying the same was part of the record. Brown testified that Pritchard wrote a letter on October 16, 1985, agreeing that CNA should settle the malpractice suit. Pritchard merely claimed that no one had told him it had been settled.

ing on a motion for a stay of the Board's order. On July 5, 1988, over the objection of the Board, the Logan County Circuit Court entered an order granting Pritchard's motion for a stay, provided that "his care and treatment of all of his patients is closely monitored by another physician selected by this Court."

Neither Pritchard nor the Board of Medicine were able to locate a physician willing to undertake the required supervision. Thus, the Board notified the Logan County Circuit Court in writing that if Pritchard was practicing medicine without a physician selected by the Court, he was in violation of the court's order. Over the objection of the Board, on July 25, 1988, the Circuit Court of Logan County entered an order amending its July 5, 1988, order to specify that "the Court will hereby monitor and supervise" Pritchard's medical practice during the stay, and the court appointed B.P. Rao, M.D., an officer of the court as a special commissioner of the court to monitor and supervise Pritchard.

On August 1, 1988, the case was argued before the Logan County Circuit Court. On November 19, 1988, the circuit court reversed the order of the Board of Medicine revoking Pritchard's license and ordered counsel for Pritchard to prepare an order for entry consistent with the opinion. Upon the failure of Pritchard's counsel to prepare such an order, counsel for the Board prepared the order, which was entered on February 28, 1989.

That order set aside the Board's order revoking Pritchard's medical license and remanded the matter to the Board for further proceedings to be conducted in accordance with the specific directions of the court: (1) requiring the filing of a new or amended complaint outlining in detail each alleged act of Pritchard's constituting improper care and requiring the Board to present direct evidence as to what was done that should not have been done; (2) requiring the Board to discuss a Correction Action Plan filed by Pritchard after the

Board filed charges against him in the context of mitigation; (3) requiring that the Board not consider on remand Pritchard's failure to report a malpractice settlement absent new and material evidence, since the court determined that Pritchard did not know of the settlement; (4) requiring that the statements made by Pritchard at the Complaint Committee not be introduced in evidence without the consent of all the parties, in accordance with Board regulations; and (5) requiring that transcripts and minutes be duly kept as required by the Board's rules. This proceeding is the Board of Medicine's appeal from the February 28, 1989, order of the Logan County Circuit Court.

The appellants complain of numerous errors made by the circuit court in reversing their decision to revoke Dr. Pritchard's license. The appellants argue that the circuit court erred in finding that the Board's revocation order was made based upon unlawful procedures and that the Board violated its own procedures in reaching their conclusion. We agree and reverse the order of the Circuit Court of Logan County.

■ Specifically, the Circuit Court of Logan County stated that the Board of Medicine erred in submitting into evidence on the merits of the case certain statements made by Pritchard regarding the Corrective Action Plan and a previous malpractice settlement, at the Complaint Committee meeting of the Board of Medicine in September, 1988. The circuit court pointed to the rules and regulations of the Board of Medicine, 11 CSR 1, § 22.10, which held that "statements made at a conference may not be introduced at any hearing on the merits without the consent of all parties to the hearing...."[5]

The Board counters that Pritchard consented to the statements being introduced into evidence and made part of the decision in the case, since Dr. Pritchard wanted to tell his "side of the story." Thus, at the hearing Pritchard testified that he did not misrepresent the information on his appli-

---

**5.** In West Virginia the practice of medicine is a privilege, not a right. W.Va.Code § 30–3–1 (1986). Thus, the practice of medicine is sub-ject to reasonable rules and regulations promulgated by the legislature and can be revoked if those rules are violated.

cation form regarding the malpractice case.[6] In fact, Pritchard testified at the hearing about what had occurred at the conference before the Complaint Committee: "It was exactly the same thing that I am saying now." Finally, Pritchard did not object to Walton's testimony about the statements he had made before the Complaint Committee in September, 1987.

In syllabus point 10 of *State v. Bragg,* 140 W.Va. 585, 87 S.E.2d 689 (1955), the Court held that "[a]n error in the admission of evidence not objected to by the defendant is deemed waived by him." Similarly, in *State v. Boyd,* 166 W.Va. 690, 276 S.E.2d 829 (1980), this Court held that an attorney must preserve evidentiary errors on the record, or be foreclosed from raising them on appeal. " 'It is clear under our law, that as to evidentiary errors, an attorney must preserve them on the record or be foreclosed from raising them on appeal.' *State v. Clawson,* W.Va. [165 W.Va. 588], 270 S.E.2d 659 (1980); *State v. Mahramus,* 157 W.Va. 175, 200 S.E.2d 357 (1973)." *Boyd,* 166 W.Va. at 698, 276 S.E.2d at 834.

We believe the rule enunciated in *Bragg* is equally applicable to proceedings before official bodies. In this case, no objection was made on the record and thus, under *Bragg* and *Boyd,* Pritchard is foreclosed from raising them at this point. Unlike jurisdiction, a party cannot use a piece of evidence in his defense and then, when unsuccessful, attempt to use the same evidence as a basis of error for reversal.[7]

The circuit court also found that the Board of Medicine erred in deferring to the findings of the Peer Review Organization and also the Inspector General of the Department of Health and Human Services. Specifically, it stated that the Board abrogated its duty to make an independent finding of fact to other agencies. The Board counters that the hearing was adequate and that it was proper for them to rely upon the findings of other agencies in reaching its decision.

We agree. The appellee's due process rights were not harmed by the procedure below.[8] Pritchard received a full and fair hearing before an independently appointed hearing examiner on November 5, 1987, at which time his counsel had the opportunity to cross-examine the witnesses against him. Further, it would be unreasonable and a waste of resources to require the Board of Medicine to reexamine, individually, every case discussed in detail by the PRO, an agency comprised of doctors whose sole duty it is to review such cases. Who better than the PRO to review cases of alleged incompetence and negligence? Moreover, the report of the PRO contained specific details regarding the alleged incompetence and negligence. Pritchard's after-the-fact complaint that the Board should not have used the PRO's assessment, and that the assessment was not adequately detailed, comes too late. It was only after the judgment of the Board that Pritchard stated that the complaint was not detailed. No

---

**6.** At the hearing, the hearing examiner asked Pritchard and his counsel whether the following summary of the issue was correct:

> We have reached ... two fundamental issues in this case as a result of the prehearing and one is ... his [Pritchard's] testimony in opposition and his evidence in opposition to any allegation that he misrepresented certain information on his biennial application, which is more accurately reflected and alleged in the complaint, is that correct?

Pritchard's counsel responded: "That is correct."

**7.** Where the lack of jurisdiction is the issue before the Court, the failure to object to the jurisdiction in the court below does not mean that it is too late to raise the objection in the appellate court. *Hall v. Wadsworth,* 30 W.Va. 55, 3 S.E. 29 (1887). *See also State v. Bragg,* 140

W.Va. 585, 87 S.E.2d 689 (1955); 58 W.Va.L. Rev. 110 (1955).

**8.** In *Morgan v. United States,* 298 U.S. 468, 56 S.Ct. 906, 80 L.Ed. 1288 (1936), the Supreme Court ruled that:

> [I]t cannot be said that the failure to hear the respondents separately was an abuse of discretion. Again, while it would have been good practice to have the examiner prepare a report and submit it to the Secretary and the parties, and to permit exceptions and arguments addressed to the points thus presented ... we cannot say that that particular type of procedure was essential to the validity of the hearing. The statute does not require it and what the statute does require relates to substance and not form.

298 U.S. at 478, 56 S.Ct. at 910, 80 L.Ed. at 1294.

application was made by Pritchard for a more definite and detailed statement under W.Va.Code § 29A–5–1 and 11 CSR 3, § 10.4; nor was an objection made at the hearing to the adequacy of the complaint.[9]

West Virginia Code § 29A–5–1 (1986) states that the notice of hearing should contain the "date, time and place of the hearing and a short and plain statement of the matters asserted." Our review of the record reveals that the notice in this case contained the required material. Thus, Pritchard received fair and complete notice of the charges against him.[10]

We conclude that the West Virginia Board of Medicine may utilize the assessment of the West Virginia Peer Review Organization in its determination whether to revoke a license to practice medicine if the assessment is sufficiently detailed to determine the alleged improper or unneces-

sary care and satisfies the notice requirements of W.Va.Code § 29A–5–1 (1986). We also conclude that no violation of the appellee's due process rights occurred regarding the adequacy of the complaint or the hearing. Having agreed with the Board of Medicine's assignments of error on these two issues, we find it unnecessary to reach the Board's remaining allegations. Accordingly, we reverse the case and reinstate the order of the Board of Medicine revoking the medical license of Dr. Jose Pritchard.

Reversed.

**9.** The appellant, who was represented by counsel, answered the complaint and made statements at the hearing indicating that he understood his attorney's explanation to him of the matters set out in the complaint.

**10.** *See Mathews v. Eldridge,* 424 U.S. 319, 348–49, 96 S.Ct. 893, 909, 47 L.Ed.2d 18, 41 (1976),

which held that the "essence of due process is the requirement that a 'person in jeopardy of serious loss [be given] notice of the case against him and opportunity to meet it.'" (Citations omitted.)