295 S.E.2d 271

**STATE ex rel. Steven ASKIN**

v.

**Hon. Pierre DOSTERT, Judge, &
Donald Giardina, Sheriff.**

No. 15538.

Supreme Court of Appeals of
West Virginia.

June 17, 1982.

G. Patrick Jacobs, Charleston, D. Michael Burke, Martinsburg, for relator.

Richard S. Glaser, Jr., and Marianne K. Hoover, Asst. Attys. Gen., Charleston, for respondents.

McGRAW, Justice:

In this habeas corpus proceeding the petitioner, Steven M. Askin, challenges the constitutionality of W.Va.Code § 30-2-8 (1980 Replacement Vol.), which recognizes the right of a court to require from an attorney security for his good behavior.[1]

The petitioner is an attorney at law licensed to practice in the State of West Virginia. On the morning of March 26, 1982, he was representing a client in connection with a charge of murder in the Circuit Court of Jefferson County, Judge Pierre E. Dostert, one of the respondents herein, presiding.

The petitioner asserts that while cross-examining a State witness he was attempting to show inconsistencies between the witness' in-court testimony and a prior statement the witness had given the State Police, by the use of a photocopy of the written statement of the witness procured from the prosecuting attorney. The record indicates that the trial judge, acting *sua sponte* and without objection from the prosecuting attorney, asked the petitioner whether the statement he was using to impeach the witness was signed by the witness. The petitioner replied that it was not, but that it was a photocopy of the written statement the witness had given

---

1. W.Va.Code § 30-2-8 provides:

Nothing in the preceding section [§ 30-2-7] shall affect the right of any court to require from an attorney therein security for his good behavior, or to fine him for a contempt of the court.

W.Va.Code § 30-2-7 provides:

If the supreme court of appeals or any court of record of this State, except the county court, observe any malpractice therein by any attorney, or if complaint, verified by affidavit, be made to any such court of malpractice by any attorney therein, such court shall order the attorney to be summoned to show cause why his license shall not be suspended or annulled. A summons shall thereupon be issued by the clerk of such court containing a copy of the charges and requiring the attorney to appear and answer the same on a day to be named therein, which summons may be served in the same manner as a summons commencing an action may be served, and the service shall be made at least five days before the return day thereof. Upon the return of the summons executed, if the attorney appear and deny the charge of malpractice, the court shall, without a jury, try the same. If the attorney be found guilty by the court, or if he fail to appear and deny the charge, the court may either suspend or annul the license of such attorney as in its judgment shall seem right.

Whenever a judgment or decree shall be standing or rendered in any of said courts against an attorney for money collected by him as such, it shall be the duty of such court to suspend the license of such attorney until such judgment or decree shall be satisfied.

An appeal shall lie from any court of record of limited jurisdiction established under the provisions of section 19 of article VIII of the Constitution of this State, to the circuit court of the county, and from any circuit court to the supreme court of appeals of the State, from any order suspending or annulling the license of any attorney proceeded against under the provisions of this section.

the State Police, and that he had received the photocopy from the prosecutor. The trial judge, again acting *sua sponte* and without objection by the State, informed the petitioner that he could not cross-examine the witness with an unsigned copy of the statement.

The petitioner then asked the court to require the prosecuting attorney to produce the witness' signed statement. However, the court informed the petitioner that he could not cross-examine the witness by use of the signed statement because it had not been introduced into evidence. The petitioner attempted to inform the court of the provisions of Rule 26.2 of the West Virginia Rules of Criminal Procedure [2] by reading the rule to the court, and explained that he was not trying to introduce the statement into evidence.

At this point the trial judge directed the sheriff to remove the jury from the courtroom, and ordered the petitioner to post a security of $50 to guarantee his good conduct for the remainder of the trial. The petitioner informed the court that he did not have $50 in cash on his person. The court then directed the petitioner to write a check in the amount of $50. The petitioner responded that he did not have a check with him and moved for a mistrial. The court next directed the petitioner to go to the judge's chambers and to telephone his office and have a check sent to court. When the petitioner refused, the court ordered him into the custody of the sheriff, the other respondent herein, for contempt of court, "for a period of ten (10) days, or until such time as he obeys the order of the court, to post Fifty Dollars ($50.00) conditioned upon his good behavior ...." The

2. W.Va.R.Crim.P. 26.2 provides:

RULE 26.2. PRODUCTION OF STATEMENTS OF WITNESSES

(a) *Motion for Production.* After a witness other than the defendant has testified on direct examination, the court, on motion of a party who did not call the witness, shall order the attorney for the State or the defendant and his attorney, as the case may be, to produce for the examination and use of the moving party any statement of the witness that is in their possession that relates to the subject matter concerning which the witness has testified.

(b) *Production of Entire Statement.* If the entire contents of the statement relate to the subject matter concerning which the witness has testified, the court shall order that the statement be delivered to the moving party.

(c) *Production of Excised Statement.* If the other party claims that the statement contains matter that does not relate to the subject matter concerning which the witness has testified, the court shall order that it be delivered to the court in camera. Upon inspection, the court shall excise the portions of the statement that do not relate to the subject matter concerning which the witness has testified, and shall order that the statement, with such material excised be delivered to the moving party. Any portion of the statement that is withheld from the defendant over his objection shall be preserved by the attorney for the State, and, in the event of a conviction and an appeal by the defendant, shall be made available to the appellate court for the purpose of determining the correctness of the decision to excise the portion of the statement.

(d) *Recess for Examination of Statement.* Upon delivery of the statement to the moving party, the court, upon application of that party, may recess proceedings in the trial for the examination of such statement and for the preparation of its use in the trial.

(e) *Sanctions for Failure to Produce Statement.* If the other party elects not to comply with an order to deliver a statement to the moving party, the court shall order that the testimony of the witness be stricken from the record and that the trial proceed, or if it is the attorney for the State who elects not to comply shall declare a mistrial if required by the interest of justice.

(f) *Definition.* As used in this rule, a "statement" of a witness means:

(1) A written statement made by the witness that is signed or otherwise adopted or approved by him;

(2) A substantially verbatim recital of an oral statement made by the witness that is recorded contemporaneously with the making of the oral statement and that is contained in a stenographic, mechanical, electrical, or other recording or a transcription thereof;

(3) A statement, however taken or recorded or a transcription thereof, made by the witness to a grand jury.

The reporter's original notes to subdivision (f) of Rule 26.2 state:

Subdivision (f) makes it clear that all written statements, whether signed or adopted by the witness, are within the purview of this rule. *Goldberg v. United States,* 425 U.S. 94, 96 S.Ct. 1338, 47 L.Ed.2d 603 (1976). A recorded oral statement must be produced under this rule if it is recorded contemporaneously with the making of the oral statement. Finally, any record made of testimony before the grand jury qualifies as a statement.

trial was recessed pending obedience of this order.[3]

That same day the petitioner, while in jail, filed his petition by counsel for a writ of habeas corpus, which was granted by this Court. The petitioner was released from jail without bond at 1:50 p. m. after approximately four hours of incarceration.

The petitioner contends that he should not be found in contempt of court because the order of the circuit court commanding him to post $50 security conditioned upon his good behavior has no legitimate basis in the law. He argues that W.Va.Code § 30–2–8 is unconstitutional because it is vague and overbroad and does not give a person of ordinary intelligence fair notice of what conduct is prohibited by the statute, and thus violates the guaranty of due process contained in article 3, section 10 of the West Virginia Constitution.

The petitioner further contends that the statute infringes upon his right to free speech, as protected by W.Va.Const. art. 3, § 7, and upon his client's right to counsel, protected by W.Va.Const. art. 3, § 14. The petitioner argues that W.Va.Code § 30–2–8, as utilized by the respondent, inhibits zealous advocacy on behalf of counsel representing criminal defendants, and should be declared unconstitutional.

The petitioner argues in the alternative that even if W.Va.Code § 30–2–8 is held to be constitutional, he should not be held in contempt of court because the trial court's ruling thereon constituted an abuse of discretion and lacked sufficient legal foundation. He contends that the order of the trial court finding him in contempt was invalid under the criteria established by this Court in *State v. Boyd,* 166 W.Va. 690, 276 S.E.2d 829 (1981), because the petitioner's conduct did not justify a citation for contempt, and that his failure to obey an unlawful order of a court does not constitute contempt.

The respondents answer stating that this proceeding is now moot because the petitioner was released from jail approximately four hours after his incarceration, and that he returned to the courtroom and complied with the trial court's evidentiary ruling. The respondents further argue that rulings on evidentiary matters are within the sound discretion of the trial court, and are final until overruled by an appellate court, and therefore, the petitioner abused his position as an officer of the court by refusing to honor the court's ruling. The respondents contend the petitioner's behavior warranted the posting of bond, and his refusal to do so justified a finding of contempt and incarceration. Respondent Dostert has also filed an individual reply to the writ issued by this Court, in which he contends that there is no outstanding controversy in this matter, and that the petitioner's conduct justified the imposition of the good behavior bond.

There are two basic issues raised by this proceeding: (1) does a West Virginia circuit court have the power to require security for an attorney's good behavior; and (2) does the refusal to obey a court order requiring such security constitute a basis for a contempt citation.

## I.

At common law many American courts claimed authority to govern the admission and practice of attorneys appearing before them as a necessary component of their inherent judicial powers. *See, e.g., West Virginia State Bar v. Earley,* 144 W.Va. 504, 529–530, 109 S.E.2d 420, 436 (1959) and cases cited therein. In addition, state legislatures often enacted statutes or rules regulating the admission and practice of attorneys in state courts. *See Annot.,* 144 A.L.R. 150 (1943). Much confusion resulted from these two divergent lines of authority, and different state courts took different approaches when faced with challenges to statutes regulating the practice of law. *Id.*

■ It was decided at an early point in West Virginia jurisprudence that the Legis-

---

**3.** A transcript of the foregoing portion of the circuit court proceedings is attached as an ap-

pendix to this opinion.

lature possessed the authority to govern the admission and practice of attorneys in West Virginia courts, but that the judiciary retained its common law supervisory powers "to exclude or admit, on application for admission, or to dismiss, after admission, for misconduct or unfitness of character ...." *Ex parte Hunter,* 2 W.Va. 122, 182 (1867). However, as a result of legislative and constitutional modifications, the dichotomy of authority to regulate the practice of law, once shared by the legislative and judicial departments, has not survived in West Virginia. Today, the exclusive authority to define, regulate and control the practice of law in West Virginia is vested in the Supreme Court of Appeals. *State ex rel. Frieson v. Isner,* 168 W.Va. 758, 285 S.E.2d 641 (1981).

The position of this Court as sole regulator of the practice of law in West Virginia began with the enactment by the Legislature, in 1945, of W.Va.Code § 51–1–4a (1981 Replacement Vol.). *See* 1945 W.Va. Acts ch. 44. The statute mandated that this Court promulgate rules defining the practice of law, prescribe a code of ethics governing the professional conduct of attorneys, and adopt procedures for disciplining violations thereof.[4] Enactment of W.Va.Code § 51–1–4a thus placed in this Court exclusive authority to promulgate rules governing the practice of law, and conclusively transferred authority for admitting to the practice of law from local courts to the Supreme Court of Appeals. This shift of power was recognized in *West Virginia State Bar v. Earley, supra.* Furthermore, with ratification of the 1974 Judicial Reorganization Amendment the exclusive power of this Court to govern the practice of law attained the status of constitutional mandate. W.Va.Const. art. 8, § 1 *et seq.; see State ex rel. Frieson v. Isner, supra.* Thus, the Legislature first delegated its authority to regulate the practice of law to this Court by enactment of W.Va.Code § 51–1–4a in 1945, and thereafter abrogated its power to govern the practice of law by the proposal and submission of the 1974 Judicial Reorganization Amendment, *see* Committee Substitute for Senate Joint Resolution No. 6, 1974 W.Va. Acts at 946, which was subsequently rati-

---

**4.** W.Va.Code § 51–1–4a provides:

The supreme court of appeals of West Virginia shall, from time to time, prescribe, adopt, promulgate, and amend rules:

(a) Defining the practice of law.

(b) Prescribing a code of ethics governing the professional conduct of attorneys-at-law and the practice of law, and prescribing a code of judicial ethics.

(c) Prescribing procedure for disciplining, suspending, and disbarring attorneys-at-law.

(d) Organizing and governing by and through all of the attorneys-at-law practicing in this State, an administrative agency of the supreme court of appeals of West Virginia, which shall be known as "the West Virginia State bar." The West Virginia State bar shall be a part of the judicial department of the State government and is hereby created for the purpose of enforcing such rules as may be prescribed, adopted and promulgated by the court from time to time under this section. It is hereby authorized and empowered to perform the functions and purposes expressed in a constitution, bylaws and amendments thereto as shall be approved by the supreme court of appeals from time to time. All persons practicing law in this State shall be members of the West Virginia State bar in good standing: Provided, however, that the West Virginia State bar shall not become operative until its constitution and bylaws shall first have been submitted to all attorneys-at-law practicing in this State, including those presently serving in the armed forces of the United States, for the purpose of securing the suggestions and recommendations of all such attorneys-at-law, for a period of at least sixty days prior to the entry of an order by such court approving said constitution and bylaws.

(e) Fixing a schedule of fees to be paid by attorneys-at-law practicing in the State of West Virginia for the purpose of administering this section, and providing for the collection and disbursement of such fees: Provided, however, that the annual fees to be paid by any attorney-at-law shall not exceed the sum of five dollars, unless a majority of the attorneys-at-law practicing in this State consent to the payment of a higher annual fee.

The inherent rule-making power of the supreme court of appeals is hereby declared. When and as the rules of the court herein authorized shall be prescribed, adopted, and promulgated, all laws and parts of laws that conflict therewith shall be and become of no further force or effect to the extent of such conflict.

The Definition of the Practice of Law and Code of Professional Ethics were first promulgated by this Court March 28, 1947. The Constitution of the West Virginia State Bar was adopted October 7, 1950, and approved by this Court April 10, 1951.

fied by the people at the general election on November 5, 1974.

■ The statute we are here asked to consider, W.Va.Code § 30–2–8, is a vestige of earlier times when inferior courts exercised the power to govern the admission and practice of attorneys appearing before them. The statute is not a grant of power by the Legislature to the courts, but rather constitutes an inferential recognition of the power inferior courts possessed at common law to require security in order to prevent the obstruction or interruption of the administration of justice.[5] We find that the common law power of inferior courts to require security for good behavior, as applied to attorneys, is obsolete and has been superceded by the modern organization of judicial power in West Virginia; we therefore hold that W.Va.Code § 30–2–8 is of no force and effect.

W.Va.Code § 30–2–8 was last amended in 1923, twenty-two years before enactment of W.Va.Code § 51–1–4a, twenty-four years before adoption of the Code of Professional Ethics, twenty-eight years before approval of the Constitution of the West Virginia State Bar, thirty-six years before the decision in *West Virginia State Bar v. Earley, supra,* and fifty-one years before ratification of the 1974 Judicial Reorganization Amendment. Arguably, the common law power to require security from attorneys to insure their good behavior as recognized in W.Va.Code § 30–2–8, may have been a necessary power in previous times to insure the smooth administration of justice. The power was obviously designed to dissuade counsel from contemptuous or otherwise disruptive acts which could obstruct the business of the court. However,

the professional conduct of attorneys is now regulated by rules promulgated by this Court, which, with the enactment of W.Va. § 51–1–4a, and ratification of the 1974 Judicial Reorganization Amendment, became the sole repository of authority to govern the practice of law. Therefore, to the extent the power to require security for good behavior conflicts with the rules promulgated by this Court, it must fall. *See* W.Va.Code § 51–1–4a.

The right to practice law in all of the courts of this State is a right granted to qualified persons by the Supreme Court of Appeals. The power to require security for good behavior, when exercised against an attorney, effectively permits a circuit court to suspend from practice an attorney duly licensed by this Court to practice law in all courts of this State, thus usurping the exclusive jurisdiction of this Court to regulate the practice of law.

■ Certainly, as we recognized in *State v. Boyd, supra,* circuit court judges are not required to silently tolerate opprobrious conduct on the part of attorneys appearing before them which threatens to obstruct the administration of justice. However, adequate sanctions and enforcement procedures exist through which courts can insure orderly proceedings without resort to the summary action employed by the court below. These include the power of a court to cause the institution of contempt proceedings, *see* W.Va.Code § 61–5–26 (1977 Replacement Vol.), to initiate disciplinary action before the committee on legal ethics of the West Virginia State Bar for violation of the Code of Professional Responsibility, *see* Article VI, By-Laws of the West Virginia State Bar, or to seek an indictment for

---

5. The common law rule in England was that only inferior courts which were of record had the power to commit for contempt. However, inferior courts not of record did have the power to eject any person whose conduct amounted to an obstruction of the business of the court, or to order him to provide a surety for his good behavior. *See* 1 W. Blake Odgers & Walter Blake Odgers, *The Common Law of England* at 196 (1911). Although our research reveals no reported cases in which the power was exercised against an attorney or otherwise, apparently the English common law rule was brought

to Virginia in colonial times, *see* Va.Code ch. XLXIV, § 7 [1849], and thus to this jurisdiction. *See* W.Va.Const. art. 8, § 13.

It should be made clear that we are not here concerned with the statutory power of a magistrate to require from persons of ill fame security for their good behavior and to keep the peace. *See* W.Va.Code §§ 62–10–1 and 62–10–6 (1977 Replacement Vol.); *see also Kolvek v. Napple,* 158 W.Va. 568, 212 S.E.2d 614 (1975); *State ex rel. Yost v. Scouszzio,* 126 W.Va. 135, 27 S.E.2d 451 (1943).

obstruction of justice. *See* W.Va.Code §§ 61–5–17, 61–5–27 (1977 Replacement Vol.). These procedural devices, which permit trial courts to maintain order and decorum in the courtroom, do not usurp the exclusive jurisdiction of this Court to regulate the practice of law because in each instance the due process rights of the attorney are preserved, thus insuring the propriety of the trial court's action, and an ultimate appeal can be had to this Court to contest the lower court's action. The action taken by the court in this case, however, provides no due process protection to an attorney ordered to provide security.

■ It is fundamental that no individual can be required to forfeit constitutionally protected property and liberty interests without procedures designed to prevent arbitrary treatment by the government. W.Va.Const. art. 3, § 10. As we stated in *Major v. DeFrench*, 169 W.Va. 241, 286 S.E.2d 688, 695 (1982): "It is fundamental to say that due process guarantees freedom from arbitrary treatment by the state. Thus whenever government action infringes upon a person's interest in life, liberty, or property, due process requires the government to act within the bounds of procedures that are designed to insure that the government action is fair and based on reasonable standards." The exercise of power in this case fails to meet due process standards because the summary government action impinged upon constitutionally protected property and liberty interests without procedures to insure fundamental fairness. A government official may not ignore the fundamental requirements of due process simply because he or she wears judicial robes. A court therefore cannot order an attorney practicing before it to provide security for his good behavior, and then imprison him when he refuses to do so, without providing some notice of the type of conduct which warrants imposition of the order, and the opportunity for a hearing at which a defense to the alleged misconduct may be presented.

■ Furthermore, we find merit in the petitioner's argument that the common law power of courts to require security from an attorney for his good behavior has the potential of seriously infringing upon the right to the effective assistance of counsel possessed by criminal defendants under the provisions of article three, section fourteen of the West Virginia Constitution. *See, e.g., State ex rel. Favors v. Tucker*, 143 W.Va. 130, 100 S.E.2d 411 (1957), *cert. denied*, 357 U.S. 908, 78 S.Ct. 1153, 2 L.Ed.2d 1158 (1958). Inexorably intertwined with the right of a criminal defendant to the effective assistance of counsel is the obligation of all lawyers to zealously represent the interests of their clients. *See* Canon 7, West Virginia Code of Professional Responsibility. This Court has recognized that under our adversary system of justice, zealous advocacy on the part of an attorney must be permitted. *State v. Boyd, supra.* In this case the petitioner was ordered to provide security while attempting to explain to the court his interpretation of the provisions of Rule 26.2 of the West Virginia Rules of Criminal Procedure. The transcript does not support the charge that the petitioner was disrespectful to the court, and it is clear under our law that counsel has the duty, when addressing the court in the interest of his client, to contest adverse views of the trial court expressed in the argument. *State v. Jasper*, 78 W.Va. 385, 88 S.E. 1096 (1916). The petitioner's remarks can only be characterized as zealous advocacy on behalf of his client. *Cf. State v. Boyd, supra.* If we were to permit trial courts to require security from attorneys when they vigorously press a point of law, zealous advocacy on behalf of litigants during oral argument will be seriously chilled.

We therefore conclude that the common law power of inferior courts to require security from attorneys to guarantee their good behavior, as inferred from W.Va.Code § 30–2–8, in addition to conflicting with, and usurping the exclusive jurisdiction of the Supreme Court of Appeals to regulate the practice of law in West Virginia, also infringes upon the due process rights of the attorney subjected to the court's order requiring security, and the right to the effective assistance of counsel of a criminal defendant. Consequently, such power does not exist in this jurisdiction.

## II.

■ We now consider whether the petitioner's refusal to obey the lower court's order requiring security constitutes a basis for a citation of contempt. It has been widely recognized that where a court has jurisdiction to issue a particular order, the fact that such order is erroneous, irregular, or is improvidently rendered, does not justify one in disregarding or violating the order, and then citing the court's error as a defense to a charge of contempt. *See Annot.*, 12 A.L.R.2d 1059, § 41 (1950) and cases cited therein. Where, however, the court or judge lacks jurisdiction, or is without power or authority to render the order, refusal to comply with such order may not be punished as contempt. *Id.* at § 22; *Smoot v. Dingess,* 160 W.Va. 558, 236 S.E.2d 468 (1977) (Miller, J., concurring); *Eastern Associated Coal Corp. v. Doe,* 159 W.Va. 200, 220 S.E.2d 672 (1975); *White v. County Court of Roane County,* 99 W.Va. 504, 129 S.E. 401 (1925); *Powhatan Coal & Coke Co. v. Ritz,* 60 W.Va. 395, 56 S.E. 257 (1906). The common law power of inferior courts to require security from an attorney for good behavior does not exist in this jurisdiction, having been abrogated by enactment of W.Va.Code § 51–1–4a, and by ratification of the 1974 Judicial Reorganization Amendment. Thus, because the court below had no power or authority to order the petitioner to give security for his good behavior, the petitioner's refusal to comply with such order may not be punished as contempt.

For the foregoing reasons the writ of habeas corpus is granted.

Writ granted.

### APPENDIX

The transcript of the relevant portion of the proceedings is:

COUNSEL: ... I want to hand you this piece of paper .... I want you to read it to yourself. After—after you have finished reading it, look it over and let me know. Take your time and let me know. Have you read it over, sir?

WITNESS: (Nodded head affirmatively—indicating an affirmative response.)

COUNSEL: Thank you. Now, I would like to ask you—if—in fact I'll give it back to you. I want you to use this as a point of reference.

COURT: Wait a minute. Did he sign it?

COUNSEL: In the original copy (of the) State police. Let me get. it from Corporal Sharp then.

COURT: All right.

COUNSEL: I don't have it. ... I would like the original of it, please.

COURT: You and—can present evidence as you wish.

COUNSEL: I can't take it from [the prosecutor]. He has the original. I don't—all I have is the copy.

COURT: You can—can call the Corporal.

COUNSEL: I want to have the—offer the copy, if you—you are telling—telling me not to show him—him one.

COURT: You may use him as your—your own witness.

COUNSEL: I would like to offer—to have the original.

COURT: I'm sorry, the rule of (the) Court provide that the Prosecution goes first, then the defense goes next.

COUNSEL: Thank you. Now, if the Court's—is the Court telling me I cannot ask him—him questions about the photocopy?

COURT: The Court has ruled.

COUNSEL: I don't understand the ruling. What's the ruling?

COURT: You may not use the statement since he did not sign it.

COUNSEL: I would like the original from [the prosecutor] which I'm—I'm entitled to have, your Honor, for cross-examination purposes.

COURT: Fine. If you have—have the original. If—you may not cross-examine on it....

COUNSEL: Why not?

COURT: It has not been admitted to evidence, nor was there to be any testimony as to the taking of it by any witnesses.

COUNSEL: I'll lay that foundation with the—this witness and ask him. He already said he gave the—a statement, your Honor. I asked him if he gave it. I gave him the dates and dates—he said he did it. He said he gave this statement. The foundation has been laid.

COURT: He did not sign it and that is the only—only statement that may be used after a foundation has been laid.

COUNSEL: I'm entitled by the procedures (by procedure) to have (the) original statement.

COURT: Please do not tell me what the procedures (procedure) is, Mr. Askin. I'm —I'm the Judge in this Court. You're not.

COUNSEL: Note my exception, your Honor.

COURT: Your exception is noted.

COUNSEL: I need the original. Although [the prosecutor] may not have it, I think—I think the Supreme Court said I'm—I'm— entitled to have—to have it. . . .—to have it to cross-examine the witness. I don't want the photocopy.

PROSECUTOR: Your Honor, . . . .

COURT: You insist on having your own way, Mr. Askin. I have ruled.

COUNSEL: The Supreme Court says I'm entitled.

COURT: You're out of order.

COUNSEL: Am I being told I can't have a—the statement of the witness?

COURT: I did not say that. There's a way to get that statement in. You know the law as well as I do. I'm not here to teach law.

COUNSEL: The Supreme Court (ruled) that the Prosecutor should furnish on—it to me. I am not to get (it) any other way. That's what the rules (rule) of criminal procedure says. It I—it is the procedure of criminal trials—is that the Defense (after) the direct examination—I'll read the rules, your Honor, if the Court needs me to do that.

COURT: Court's not on the stand, Mr. Askin.

COUNSEL: The Prosecutor obligated (is obligated) under the rules of procedure to give me that—the witness' statements (statement) when he finishes direct examination.

COURT: Only a signed statement, Mr. Askin.

COUNSEL: That's not true, your Honor.

COURT: The rules . . .

COUNSEL: Your Honor, that's not true . . . . I'll read the Court's—I'll—I'll read the rules if you like.

COURT: I'm aware of the rules.

COUNSEL: That's not a correct statement of the rules. I'm entitled to do—receive(d) any statements, oral representations he has made, copies of depositions, testimony, grand jury testimony . . . nothing about a written and signed statement . . . criminal procedure.

COURT: There's no statement in the file.

PROSECUTOR: I have it in the police reports, your Honor.

COUNSEL: Substantially verbatim, reciting of oral statements and a—written statements.

COURT: The fact that you're—you're entitled to a—received—receive it, does not mean that you're—you're entitled to introduce it into evidence without further establishing a foundation.

COUNSEL: I'm not—not trying to introduce it into evidence. I'm trying to have— to ask a question.

COURT: Mr. Askin, the Court has ruled.

COUNSEL: I want to refresh your recollection.

COURT: You're—you're out of order.

COUNSEL: Your Honor . . . .

COURT: The Court has ruled.

COUNSEL: Then, if it please—let me . . .

COURT: Ladies and gentlemen of the jury, step back to your jury room.

(Jury left Courtroom—In Courtroom—Defendant still present in person and by Counsel.)

COURT: Post $50.00 with the Clerk conditioned on your good behavior during the rest of the—this trial.

COUNSEL: Do what, sir?

COURT: Post $50.00.

COUNSEL: I don't have $50.00 with me.

COURT: Write a check.

COUNSEL: I don't have a checkbook with me. It's in Martinsburg.

COURT: Call your—your office. Go back to my office.

COUNSEL: (You can) hold me in contempt. I'm not going to.

COURT: No. I have—I have ordered you to call your office and tell them to send a check. Do you understand?

COUNSEL: Your Honor, I'll call my office. I don't know when the check will get here.

COURT: Call your—your office—office. Tell them to dispatch it now.

COUNSEL: I move for (a) mistrial.

COURT: You call your office and tell them to send it down now.

COUNSEL: Your Honor, . . . .

COURT: You're going—not going to sit down and continuously disobey the—this Judge in this Courtroom.

COUNSEL: Your Honor, I'm entitled by ruling (rule) 26 of the discovery (rules) to have statements, oral statements, grand jury testimony of this witness.

COURT: Sir, obey my order. Go in my office, call your office and order a check now.

COUNSEL: I'm not going to order a check down, Judge.

COURT: Sheriff, take him to jail!