IN THE SUPREME COURT OF APPEALS OF WEST VIRGINIA

September 2022 Term

FILED

**November 3, 2022**

released at 3:00 p.m.
EDYTHE NASH GAISER, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

No. 20-1027

LAWYER DISCIPLINARY BOARD,
Petitioner

v.

DAVID R. TYSON,
A Member of the West Virginia State Bar,
Respondent.

Lawyer Disciplinary Proceeding

LAW LICENSE SUSPENDED AND OTHER SANCTIONS IMPOSED

_____

AND

_____

No. 22-0342

_____

OFFICE OF LAWYER DISCIPLINARY COUNSEL,
Petitioner,

v.

DAVID R. TYSON,
A Member of the West Virginia State Bar,
Respondent.

Lawyer Disciplinary Proceeding

LAW LICENSE ANNULLED

Submitted:  October 4, 2022
Filed:  November 3, 2022

Rachael L. Fletcher Cipoletti, Esq.
Chief Lawyer Disciplinary Counsel
Renee N. Frymyer, Esq.
Lawyer Disciplinary Counsel
Office of Lawyer Disciplinary Counsel
Charleston, West Virginia
Counsel for Petitioner

Tyler C. Haslam, Esq.
Haslam Law Firm LLC
Huntington, West Virginia
Counsel for Respondent

JUSTICE ARMSTEAD delivered the Opinion of the Court.

**SYLLABUS BY THE COURT**

1.      "This Court is the final arbiter of legal ethics problems and must make the ultimate decisions about public reprimands, suspensions or annulments of attorneys' licenses to practice law." Syl. Pt. 3, *Committee on Legal Ethics v. Blair*, 174 W. Va. 494, 327 S.E.2d 671 (1984).

2.      "A *de novo* standard applies to a review of the adjudicatory record made before the Committee on Legal Ethics of the West Virginia State Bar [currently, the Hearing Panel Subcommittee of the Lawyer Disciplinary Board] as to questions of law, questions of application of the law to the facts, and questions of appropriate sanctions; this Court gives respectful consideration to the Committee's recommendations while ultimately exercising its own independent judgment. On the other hand, substantial deference is given to the Committee's findings of fact, unless such findings are not supported by reliable, probative, and substantial evidence on the whole record." Syl. Pt. 3, *Committee on Legal Ethics of the West Virginia State Bar v. McCorkle*, 192 W. Va. 286, 452 S.E.2d 377 (1994).

3.      "The exclusive authority to define, regulate and control the practice of law in West Virginia is vested in the Supreme Court of Appeals." Syl. Pt. 1, *State ex rel. Askin v. Dostert*, 170 W. Va. 562, 295 S.E.2d 271 (1982).

4.      "Rule 3.16 of the West Virginia Rules of Lawyer Disciplinary Procedure enumerates factors to be considered in imposing sanctions and provides as

i

follows: 'In imposing a sanction after a finding of lawyer misconduct, unless otherwise provided in these rules, the Court [West Virginia Supreme Court of Appeals] or Board [Lawyer Disciplinary Board] shall consider the following factors: (1) whether the lawyer has violated a duty owed to a client, to the public, to the legal system, or to the profession; (2) whether the lawyer acted intentionally, knowingly, or negligently; (3) the amount of the actual or potential injury caused by the lawyer's misconduct; and (4) the existence of any aggravating or mitigating factors." Syl. Pt. 4, *Office of Lawyer Disciplinary Counsel v. Jordan*, 204 W. Va. 495, 513 S.E.2d 722 (1998).

5.     As a general rule, the annulment of a lawyer's license to practice law does not moot or void sanctions imposed in relation to a prior or concurrent disciplinary matter unless the subsequent or concurrent annulment contains language specifically voiding other properly imposed sanctions.

**ARMSTEAD, Justice:**

This matter involves two lawyer disciplinary actions brought against Respondent David R. Tyson (hereinafter "Mr. Tyson"), a member of the West Virginia State Bar. In Case No. 20-1027, the Office of Lawyer Disciplinary Counsel (hereinafter "ODC") filed formal charges against Mr. Tyson regarding alleged overbilling of the Public Defender Services Corporation (hereinafter "PDS") as well as complaints from Mr. Tyson's former clients.[1] As a result of stipulations entered into in Case No. 20-1027, the parties agreed to certain proposed sanctions including a two (2) year suspension. The Hearing Panel Subcommittee (hereinafter "HPS") adopted most of the recommended sanctions but increased the length of Mr. Tyson's recommended suspension.[2] The HPS

---

[1] We use initials herein when referring to specific clients of Mr. Tyson to protect their identities. *See Lawyer Disciplinary Board v. White*, 240 W. Va. 363, 366 n. 1, 811 S.E.2d 893, 896 n.1 (2018).

[2] In addition to not adopting the recommendation regarding the length of Mr. Tyson's suspension, the HPS also included an additional sanction addressing Count V in the Statement of Charges as the parties had not entered into any stipulation regarding that count. Specifically, the HPS recommended:

  a. That Mr. Tyson's law license be suspended for a period of three (3) years, which Mr. Tyson would voluntarily begin to serve on January 1, 2022;
  b. That upon suspension, Mr. Tyson must comply with the mandates of Rule 3.28 of the Rules of Lawyer Disciplinary Procedure;
  c. That Mr. Tyson be required to petition for reinstatement pursuant to Rule 3.32 of the Rules of Lawyer Disciplinary Procedure;
  d. That based upon an analysis completed by PDS, Mr. Tyson shall allow PDS to withhold $58,812.46 in unpaid vouchers as restitution for prior overpayments;

(continued . . .)

1

recommended that Mr. Tyson's law license be suspended for a period of three (3) years. A few months following the issuance of the HPS's recommendations in Case No. 20-1027, the Office of Lawyer Disciplinary Counsel filed a petition, Case No. 22-0342, requesting that this Court accept, with the voluntary consent of Mr. Tyson, the annulment of Mr. Tyson's license to practice law in the State of West Virginia pursuant to Rule 3.25 of the Rules of Lawyer Disciplinary Procedure.

Upon careful review of the briefs, the appendix record, the arguments of the parties, and the applicable legal authority, we adopt the recommendations of the HPS in Case No. 20-1027. In addition, we grant the Petition for Disbarment in Case No. 22-0342 and order that Mr. Tyson's license to practice law in the State of West Virginia is annulled by voluntary consent.

## I. FACTS AND PROCEDURAL HISTORY

Mr. Tyson is an attorney admitted to the West Virginia State Bar.[3] On December 21, 2020, formal charges were filed against him by and through a Statement of Charges (Case No. 20-1027). Thereafter, on May 3, 2022, ODC filed a Petition for Disbarment for Mr. Tyson (Case No. 22-0342). By Order dated June 2, 2022, this Court

---

e. That Mr. Tyson be required to refund A.R. $3,225.00, which includes $225.00 for court costs, that she was charged and paid as it was determined to be an unreasonable fee for work that was not completed; and

f. That Mr. Tyson be ordered to pay the costs of the proceedings pursuant to Rule 3.15 of the Rules of Lawyer Disciplinary Procedure.

[3] Respondent was admitted to the West Virginia State Bar on September 30, 1980.

consolidated the two cases for purposes of briefing, oral argument, consideration, and decision.

## Case No. 20-1027

The Statement of Charges filed against Mr. Tyson on December 21, 2020, contained five separate counts. Counts I and II were opened in the name of the ODC as a result of a review of billing vouchers Mr. Tyson submitted to the PDS on multiple occasions. Counts III, IV and V resulted from complaints filed against Mr. Tyson by former clients.

On September 27, 2021, this case proceeded to hearing before the HPS. On the day of the hearing, the parties executed "Stipulations Regarding Findings of Fact, Conclusions of Law and Recommendation as to Discipline," which contained stipulations regarding Counts I-IV of the Statement of Charges and requested that the HPS adopt certain recommended sanctions, including the suspension of Mr. Tyson's law license for a period of two (2) years. Mr. Tyson was to voluntarily begin to serve such suspension on January 1, 2022.[4]

---

[4] In addition to the suspension of Mr. Tyson's law license, the parties requested that the HPS adopt the following sanctions:

a. That upon suspension, Mr. Tyson must comply with the mandates of Rule 3.28 of the Rules of Lawyer Disciplinary Procedure;
b. That Mr. Tyson be required to petition for reinstatement pursuant to Rule 3.32 of the Rules of Lawyer Disciplinary Procedure;

(continued . . .)

3

With respect to Count I, on or about July 31, 2017, the ODC informed Mr. Tyson that it had opened a complaint against him based upon a review of multiple billing vouchers he had submitted for payment to the PDS. Initially, Mr. Tyson was asked to review and address forty-eight (48) vouchers submitted between August 17, 2015, and February 24, 2017. After reviewing those vouchers, Mr. Tyson indicated that some of the vouchers contained billing errors, but he asserted that the billing errors were unintentional. On or about December 14, 2017, Mr. Tyson sent correspondence to Dana Eddy, Esquire, Executive Director of the PDS, requesting information as to how to amend vouchers and the procedure to repay the PDS for errors in his vouchers. After receiving additional information from the PDS, ODC requested that Mr. Tyson explain nine additional vouchers submitted in 2017 and 2018.[5] Pursuant to the stipulations entered into with the ODC, Mr. Tyson admitted that by charging over 24 hours on each of four different days along with charging 15 hours or more each day on an additional eleven days, he violated Rule 1.5(a) of the Rules of Professional Conduct.[6] Mr. Tyson also admitted that he violated Rule

---

c. That based upon an analysis completed by PDS, Mr. Tyson agreed to allow PDS to withhold $58,812.46 in unpaid vouchers as restitution for prior overpayments; and

d. That Mr. Tyson be ordered to pay the costs of the proceedings pursuant to Rule 3.15 of the Rules of Lawyer Disciplinary Procedure.

[5] Four of the vouchers each billed over 24 hours during a single day. The remaining five vouchers each billed 18 hours or more in a single day.

[6] Rule 1.5(a) of the Rules of Professional Conduct provides:

(continued . . .)

4

3.3(a)(1) of the Rules of Professional Conduct[7] by submitting billing vouchers which misrepresented the time expended for services performed before circuit judges and/or appointing tribunals, which resulted in overpayments of fees from the PDS. Mr. Tyson also admitted that because he engaged in improper and/or unsubstantiated billing with

---

(a) A lawyer shall not make an agreement for, charge, or collect an unreasonable fee or an unreasonable amount for expenses. The factors to be considered in determining the reasonableness of a fee include the following:

(1) the time and labor required, the novelty and difficulty of the questions involved, and skill requisite to perform the legal service properly;
(2) the likelihood that the acceptance of the particular employment will preclude other employment by the lawyer;
(3) the fee customarily charged in the locality for similar legal services;
(4) the amount involved and results obtained;
(5) the time limitations imposed by the client or by the circumstances;
(6) the nature and length of the professional relationship with the client;
(7) the experience, reputation, and ability of the lawyer or lawyers performing the services; and
(8) whether the fee is fixed or contingent.

[7] Rule 3.3(a)(1) of the Rules of Professional Conduct provides:

(a) A lawyer shall not knowingly:

(1) make a false statement of fact or law to a tribunal or fail to correct a false statement of material fact or law previously made to the tribunal by the lawyer[.]

5

regard to cases in which he was appointed to represent indigent clients on behalf of the PDS, he violated Rule 8.4(c) and (d) of the Rules of Professional Conduct.[8]

With respect to Count II, Mr. Tyson admitted to violating Rule 1.5(a) of the Rules of Professional Conduct by charging over 24 hours each day on three different days as well as charging 15 hours or more each day on an additional 25 days. Further, he admitted that by his submission of incorrect billing vouchers from January 1, 2019, through June 30, 2019, he violated Rule 3.3(a)(1) of the Rules of Professional Conduct. Mr. Tyson also admitted that by engaging in improper and/or unsubstantial billing in cases in which he was appointed to represent indigent clients on behalf of the PDS, he violated Rule 8.4(c) and (d) of the Rules of Professional Conduct.

The ODC declined to pursue a violation of Rule 1.5(a) of the Rules of Professional Conduct with respect to Count III. With respect to Count IV, Mr. Tyson admitted that he failed to communicate the scope of his representation and the basis or rate of the fee with his client, J.B., and because he had not represented J.B. previously, he admitted to violating Rule 1.5(b) of the Rules of Professional Conduct.[9]

---

[8] Rule 8.4(c) and (d) of the Rules of Professional Conduct provides:

It is professional misconduct for a lawyer to:
***
(c) engage in conduct involving dishonesty, fraud, deceit or misrepresentation;
(d) engage in conduct that is prejudicial to the administration of justice[.]

[9] Rule 1.5(b) of the Rules of Professional Conduct provides:

(continued . . .)

6

Count V involved a complaint made by A.R. against Mr. Tyson. A.R. alleged that she paid Mr. Tyson a total of $3,225.00 to represent her in a divorce, but Mr. Tyson failed to file the divorce case. Mr. Tyson attributed his failure to file a divorce action on A.R.'s behalf to her alleged indecision, which he described as a "back and forth" in relation to her desire to proceed. The HPS heard testimony from A.R., Mr. Tyson's office manager and Mr. Tyson regarding these allegations and determined that Mr. Tyson failed to abide by A.R.'s decisions concerning the objectives of representation in this matter. For that reason, the HPS determined that Mr. Tyson violated Rule 1.2(a) of the Rules of Professional Conduct.[10] Due to his failure to act with promptness, the HPS found that he also violated Rule 1.3 of the Rules of Professional Conduct, which requires a lawyer to "act with reasonable diligence and promptness in representing a client." By failing to keep A.R. reasonably informed about the status of the matter, it was also determined that Mr.

---

(b) The scope of the representation and the basis or rate of the fee and expenses for which the client will be responsible shall be communicated to the client in writing, before or within a reasonable time after commencing the representation, except when the lawyer will charge a regularly represented client on the same basis or rate. Any changes in the basis or rate of the fee or expenses shall also be communicated to the client in writing.

[10] Rule 1.2(a) of the Rules of Professional Conduct provides, in part:

(a) Subject to paragraphs (c) and (d), a lawyer shall abide by a client's decisions concerning the objectives of representation and, as required by Rule 1.4, shall consult with the client as to the means by which they are to be pursued. A lawyer may take such action on behalf of the client as is impliedly authorized to carry out the representation.

Tyson violated Rule 1.4(a)(3) of the Rules of Professional Conduct, which requires a lawyer to "keep the client reasonably informed about the status of the matter."

On or about February 16, 2022, the HPS filed its "Report of the Hearing Panel Subcommittee" (hereinafter "Report"). The Report found that Mr. Tyson violated the rules to which he stipulated as well as Rules 1.2(a), 1.3, and 1.4(a)(3).[11] The HPS adopted the sanctions recommended by the parties with the following exceptions: (1) the HPS recommended that Mr. Tyson's law license be suspended for a period of three (3) years; and (2) the HPS recommended that Mr. Tyson be required to refund A.R. $3,225.00 that she was charged and paid as it was determined to be an unreasonable fee since the work was not completed.

On February 23, 2022, following a hearing, the ODC filed its consent to the HPS's recommendations. In his subsequent response to this Court's entry of a scheduling Order, Mr. Tyson also consented to the HPS's recommendations.

### Case No. 22-0342

On or about March 30, 2022, Mr. Tyson executed an Affidavit for Consent to Disbarment in disciplinary proceedings that were separate and distinct from those in

---

[11]Rule 1.3 of the Rules of Professional Conduct provides that "[a] lawyer shall act with reasonable diligence and promptness in representing a client."

Rule 1.4(a)(3) of the Rules of Professional Conduct provides that "[a] lawyer shall … keep the client reasonably informed about the status of the matter."

Case No. 20-1027.[12]  Thereafter, Lawyer Disciplinary Counsel provided a copy of the Affidavit to the Chair of the Lawyer Disciplinary Board along with a motion to accept the consent to disbarment.  The Chairperson issued an order directing Chief Lawyer Disciplinary Counsel, upon receipt of the original Affidavit, to file the same, under seal, as an attachment to a petition for disbarment filed pursuant to Rule 3.25 of the Rules of Lawyer Disciplinary Procedure.

On May 3, 2022, Chief Lawyer Disciplinary Counsel filed a Petition for Disbarment, identified as Case No. 22-0342, requesting that this Court grant the Petition and accept Mr. Tyson's "Affidavit for Consent to Disbarment" under seal.

## II.  STANDARD OF REVIEW

"The exclusive authority to define, regulate and control the practice of law in West Virginia is vested in the Supreme Court of Appeals."  Syl. Pt. 1, *State ex rel. Askin v. Dostert*, 170 W. Va. 562, 295 S.E.2d 271 (1982).  It is well-established that "[t]his Court is the final arbiter of legal ethics problems and must make the ultimate decisions about public reprimands, suspensions or annulments of attorneys' licenses to practice law."  Syl.

---

[12] The complaints at issue in Case No. 22-0342 were docketed with identification numbers 20-06-299, 20-06-303, and 20-06-306 and were pending against Respondent and under investigation by the ODC. Pursuant to Rule 3.25 of the Rules of Lawyer Disciplinary Procedure, the affidavit executed by Mr. Tyson regarding these complaints "shall not be publicly disclosed or made available for use in any other proceedings except upon order of the Court."

Pt. 3, *Committee on Legal Ethics v. Blair*, 174 W. Va. 494, 327 S.E.2d 671 (1984).  With

respect to the HPS's findings:

> A *de novo* standard applies to a review of the adjudicatory record made before the Committee on Legal Ethics of the West Virginia State Bar [currently, the Hearing Panel Subcommittee of the Lawyer Disciplinary Board] as to questions of law, questions of application of the law to the facts, and questions of appropriate sanctions; this Court gives respectful consideration to the Committee's recommendations while ultimately exercising its own independent judgment.  On the other hand, substantial deference is given to the Committee's finding of fact, unless such findings are not supported by reliable, probative, and substantial evidence on the whole record.

Syl. Pt. 3, *Committee on Legal Ethics v. McCorkle*, 192 W. Va. 286, 452 S.E.2d 377 (1994).

With these standards in mind, we consider the HPS's findings and recommended discipline

in Case No. 20-1027 and the Chief Lawyer Disciplinary Counsel's Petition for Disbarment

in Case No. 22-0342.

## III.  DISCUSSION

Mr. Tyson was admitted to the West Virginia State Bar on September 30,

1980, and therefore, he is subject to the disciplinary jurisdiction of this Court.  The two

cases involved in this consolidated case are distinct, and the ODC urges this Court to

"address the unique circumstances of each case to preserve the discipline therein."  In

essence, the ODC seeks to have this Court sanction Mr. Tyson in Case No. 20-1027 and

annul his law license in Case No. 22-0342.  We agree that the requested relief in each case

should be granted and discipline should be imposed in both cases.

10

A. CASE NO. 20-1027

The parties in Case No. 20-1027 stipulated to certain findings of fact and conclusions of law and requested the HPS adopt the following sanctions:

a. That Mr. Tyson's law license be suspended for a period of two (2) years

b. That upon suspension, Mr. Tyson must comply with the mandates of Rule 3.28 of the Rules of Lawyer Disciplinary Procedure;

c. That Mr. Tyson be required to petition for reinstatement pursuant to Rule 3.32 of the Rules of Lawyer Disciplinary Procedure;

d. That based upon an analysis completed by PDS, Mr. Tyson agreed to allow PDS to withhold $58,812.46 in unpaid vouchers as restitution for prior overpayments; and

e. That Mr. Tyson be ordered to pay the costs of the proceedings pursuant to Rule 3.15 of the Rules of Lawyer Disciplinary Procedure.

Following the hearing in this matter, the HPS filed its Report, which adopted the proposed sanctions with two modifications. First, the HPS recommended that Mr. Tyson's law license be suspended for a period of three (3) years instead of the two-year suspension stipulated by the parties. Secondly, the HPS recommended that Mr. Tyson be required to refund A.R. $3,225.00.

The ODC filed its consent to the HPS's recommendation, but Mr. Tyson did not initially file a consent or an objection to this recommendation.

However, following entry of this Court's order on June 2, 2022, which set a briefing schedule, Mr. Tyson filed his brief indicating that he did not object to the recommendations of the HPS with respect to Case No. 20-1027. Mr. Tyson also asked this

Court to consider his participation in the proceedings, including the stipulations, which we have done.

Although the parties stipulated to a two (2) year suspension, the HPS recommended a three (3) year suspension, to which the parties have subsequently consented. The sanctions imposed in this, as in all lawyer disciplinary cases, must be designed to "serve as a deterrent to other attorneys." *Committee on Legal Ethics v. McCorkle*, 192 W. Va. 286, 291, 452, S.E.2d 377, 382 (1994). When analyzing sanctions, we are guided by the well-settled principle that:

> Rule 3.16 of the West Virginia Rules of Lawyer Disciplinary Procedure enumerates factors to be considered in imposing sanctions and provides as follows: "In imposing a sanction after a finding of lawyer misconduct, unless otherwise provided in these rules, the Court [West Virginia Supreme Court of Appeals] or Board [Lawyer Disciplinary Board] shall consider the following factors: (1) whether the lawyer has violated a duty owed to a client, to the public, to the legal system, or to the profession; (2) whether the lawyer acted intentionally, knowingly, or negligently; (3) the amount of the actual or potential injury caused by the lawyer's misconduct; and (4) the existence of any aggravating or mitigating factors."

Syl. Pt. 4, *Office of Lawyer Disciplinary Counsel v. Jordan*, 204 W. Va. 495, 513 S.E.2d 722 (1998).

In support of its recommended sanctions, the HPS analyzed the required factors and determined that a three-year suspension in addition to other sanctions was warranted. We agree. Mr. Tyson stipulated to facts that support a finding that the first

12

three factors of Rule 3.16 weigh in favor of the discipline recommended by the HPS. In addition, his prior discipline was an aggravating factor.[13]

As the HPS noted, this Court has concluded that suspensions are the normal course of discipline in cases of fraudulent PDS billing. *See Lawyer Disciplinary Board v. Cooke*, 239 W. Va. 40, 799 S.E.2d 117 (2017) (two-year suspension for overbilling PDS); *Lawyer Disciplinary Board v. Hassan*, 241 W. Va. 298, 824 S.E.2d 224 (2019) (six-month suspension for value billing); and *Lawyer Disciplinary Board v. Grindo*, 243 W. Va. 130, 842 S.E.2d 683 (2020) (two-year suspension for intentional errors in PDS billing as well as failure to be truthful about self-reporting misconduct along with prior discipline). "This Court considers the protection of the public and the State coffers of paramount importance, particularly as pertains to lawyer disciplinary matters." *Cooke*, 239 W. Va. at 55, 799 S.E.2d at 132. Accordingly, we adopt the sanctions recommended by the HPS in relation to Case No. 20-1027.

B.     CASE NO. 22-0342

On March 30, 2022, Mr. Tyson executed an Affidavit for Consent to Disbarment in disciplinary proceedings that were separate and distinct from those in Case

---

[13] Mr. Tyson was admonished for a violation of Rule 1.5 of the Rules of Professional Conduct in 2005, and he was publicly reprimanded for a violation of Rule 1.16(d) and 8.1(b) of the Rules of Professional Conduct in 2019.

13

No. 20-1027.[14]  Thereafter, on May 3, 2022, Chief Lawyer Disciplinary Counsel filed a Petition for Disbarment requesting that this Court grant the Petition and accept Mr. Tyson's "Affidavit for Consent to Disbarment" under seal.

Rule 3.25 of the Rules of Lawyer Disciplinary Procedure permits a lawyer "who is the subject of an investigation into or a pending proceeding involving allegations of misconduct" to consent to disbarment.  However, the only mechanism by which this can be accomplished is for the lawyer to deliver to the Board:

> an affidavit stating that he or she desires to consent to disbarment and that (1) the lawyer's consent is freely and voluntarily given; (2) the lawyer is not being subjected to coercion or duress; (3) the lawyer is aware that there is presently pending an investigation into, or proceedings involving, allegations that there exists grounds for the lawyer's discipline, the nature of which the lawyer shall specifically set forth; (5) the lawyer acknowledges that the material facts so alleged are true; and (6) the lawyer submits his or her consent because the lawyer knows that if the charges were predicated upon the matters under investigation, or if the proceedings were prosecuted, the lawyer could not successfully defend the charges.

Rule 3.25 of the Rules of Lawyer Disciplinary Procedure.

Rule 3.25 further requires the Board to file the affidavit with this Court and directs this Court to "enter an order disbarring the lawyer by consent."  As the parties have complied with Rule 3.25, and the Affidavit meets the requirements outlined above for

---

[14] *See supra,* note 12.

consent to disbarment, we hereby annul Mr. Tyson's license to practice law in the State of West Virginia by voluntary consent.[15]

## C.    IMPOSITION OF DISCIPLINE

As we noted earlier, the ODC seeks to have this Court sanction Mr. Tyson in Case No. 20-1027 and annul his law license in Case No. 22-0342, and we agree that this the proper disposition. The sanctions in Case No. 20-1027 are important to this State as the PDS will be able to withhold $58,812.46 in unpaid vouchers as restitution for prior overpayments, and A.R. will be entitled to a refund of $3,225.00.

This Court has previously disbarred a lawyer under Rule 3.25 in distinct matters although the lawyer had been suspended. *See Lawyer Disciplinary Board v. Thorn*, 236 W. Va. 681, 783 S.E.2d 321 (2016) (one year suspension followed by an Order annulling Mr. Thorn's license by voluntary consent in No. 17-0469 (6/6/2017) (unpublished)). In addition, in 2020, this Court granted a petition to annul the law license of Timothy M. Sirk despite the fact that Mr. Sirk's license was suspended at the time such request was made. In so doing, this Court did not void or moot Mr. Sirk's prior suspension. *See Lawyer Disciplinary Board v. Sirk*, 240 W. Va. 274, 810 S.E.2d 276 (2018) and No. 19-0996 (1/9/2020) (unpublished). As a general rule, the annulment of a lawyer's license to practice law does not moot or void sanctions imposed in relation to a prior or concurrent

---

[15] Pursuant to Rule 3.33(a) of the Rules of Lawyer Disciplinary Procedure, "[t]he annulment of a license to practice law shall revoke and terminate such license, and shall constitute a disbarment."

disciplinary matter unless the subsequent or concurrent annulment contains language specifically voiding other properly imposed sanctions. Due to the gravity of the conduct involved in Case No. 20-1027, we wish to make it clear that our decision to annul Mr. Tyson's license to practice law in the State of West Virginia does not moot or nullify, in any way, the sanctions that we are imposing in Case No. 20-1027.[16] Moreover, the imposition of the sanction of suspension of Mr. Tyson's law license, and the additional sanctions imposed in Case No. 20-1027, are in addition to, and do not in any way abrogate or nullify, the annulment of his law license in Case 22-0342.

## IV. CONCLUSION

For the reasons set forth herein, we order the following sanctions:

Case No. 20-1027

(1) Mr. Tyson's law license is suspended for a period of three (3) years.
(2) Upon suspension, Mr. Tyson must comply with the mandates of Rule 3.28 of the Rules of Lawyer Disciplinary Procedure.
(3) Mr. Tyson will be required to petition for reinstatement pursuant to Rule 3.32 of the Rules of Lawyer Disciplinary Procedure.[17]
(4) Mr. Tyson shall allow the PDS to withhold $58,812.46 in unpaid vouchers as restitution for prior overpayments.
(5) Mr. Tyson is required to refund A.R. $3,225.00, (which includes the $225.00 for court costs), that she was charged and paid as it was

---

[16] We have imposed the requirement that any reinstatement pursuant to Case. No. 20-1027 must be by petition rather than automatic reinstatement merely because that was consented to in Case No. 20-1027, and because it is a condition of the *suspension* imposed *in that case.* However, because Mr. Tyson's license to practice law has also been *annulled*, any opportunity to petition for reinstatement pursuant to Rule 3.32 in Case No. 20-1027, has been foreclosed and superseded by the annulment by voluntary consent imposed pursuant to Case. No. 22-0342.

[17] *See supra*, note 16.

determined to be an unreasonable fee because the work was not completed.

(6) Mr. Tyson is ordered to pay the costs of the proceedings pursuant to Rule 3.15 of the Rules of Lawyer Disciplinary Procedure.

<u>Case No. 22-0342</u>

Mr. Tyson's license to practice law in the State of West Virginia is hereby annulled by voluntary consent.

No. 20-1027: Law License Suspended and Other Sanctions Imposed.

No. 22-0342: Law License Annulled.

17